**Frances O. DRUMMOND, Plaintiff,**

**v.**

**F. Morgan COWLES, Jr., Defendant.**

**Civ. A. No. 11237.**

United States District Court

D. Connecticut.

Jan. 9, 1968.

F. Timothy McNamara, McNamara & Havens, Hartford, Conn., for plaintiff.

Jerome D. Elbaum, Robinson, Robinson & Cole, Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

CLARIE, District Judge.

This action is submitted on cross-motions for summary judgment pursuant to Rule 56, Fed.R.Civ.P. The pleadings concede that there remain no issues of material fact to be resolved. The question of law is whether or not the bankrupt's interest in the inter-vivos trust created by his mother is alienable, so that his trustee in bankruptcy succeeds to it. The Court finds that the trustee in bankruptcy did not acquire the bankrupt's interest in the corpus of said trust fund.

## FACTS

On April 2, 1956, Caroline M. Conland created an inter-vivos trust, hereinafter referred to as the "Conland Trust", with herself and the defendant, F. Morgan Cowles, Jr., as co-trustees. The primary beneficiary was her son, the bankrupt, Charles H. Conland. It authorized the trustees to pay to him such sums as they considered necessary or advisable for his comfortable maintenance and welfare, including reasonable luxuries. In making this determination they were instructed to take into consideration his other income and resources. It also provided that so much of the trust income as was not used should be accumulated and added to the principal.[1] The controversial phase of this trust empowered the son to designate during his lifetime, by written instrument lodged with the trustees, any third person or persons to whom the trustees would be required to distribute in whole or in part the net income and/or principal of the fund, in such amounts and subject to such terms and conditions as he saw fit. However, it also provided that no such funds could be paid over to himself, his creditors, his estate or the creditors of his estate.[2] In the absence of a complete distribution of the trust during his lifetime, by the exercise of this power, he was granted "power of appointment" by will to persons other than himself, his creditors, his estate and the creditors of his estate.

The remaining operative features of the trust disclose the overall intent and purpose of the settlor who created it. They provide that if the power is not exercised or if its exercise is void or shall not take effect and Marion H. Conland, wife of the primary beneficiary, is then living, the trustees shall continue to administer the trust for her benefit as a secondary beneficiary; however, if she is not living, they shall distribute the fund per stirpes to the then living

1. Conland Trust, Art. I, § 1.1.

2. Conland Trust, Art. I, § 1.2.

descendants of the primary beneficiary, Charles H. Conland. Should the latter have no living descendants, the trustees shall distribute it to the then living descendants of the settlor, Caroline M. Conland. The secondary beneficiary was similarly empowered to direct the trustees during her lifetime, to pay out and distribute all of the principal and income of said fund, to or for the benefit of descendants of the settlor or their spouses other than herself, as she might direct by written instrument lodged with the trustees.[3] Finally, if complete distribution had not been made by the methods hereinbefore provided, upon the death of the secondary beneficiary, she was empowered to appoint by will, subject to the same restrictions applicable to the primary beneficiary. Should she fail to exercise this power, the trust was then to be distributed per stirpes to the then living descendants of the primary beneficiary and if none, then per stirpes to the then living descendants of the settlor.

On November 9, 1964, the son and his wife, both citizens of the State of California, filed voluntary petitions in bankruptcy in the United States District Court for the Southern District of California. The plaintiff was appointed trustee of both bankrupt estates on December 1, 1964 and is presently acting in that capacity. The bankrupts were given a discharge by the bankruptcy court on July 6, 1965 and thereafter on October 5, 1965, the primary trust beneficiary, Charles H. Conland, died a resident of Los Angeles. He was survived by his wife, Marion H. Conland, and his two children of a prior marriage, Elizabeth H. Conland and Susan C. Scott. He left a will, filed November 18, 1965, wherein he exercised the testamentary power of appointment under Article I, § 1.3 of said trust by bequeathing everything to the descendants who survived him, in equal shares per stirpes.

When Charles H. Conland was adjudicated a bankrupt, the corpus of the trust fund amounted to approximately 58,000 dollars. The trustee in bankruptcy now seeks to acquire 40,000 dollars of this fund to satisfy in full the claims of the creditors of the bankrupt estate and pay the expenses of the bankruptcy proceedings.[4] From time to time during the years 1960 through 1965, the primary beneficiary had directed the trustee to pay out moneys from the trust fund pursuant to Article I, § 1.2 of the trust agreement. Beneficiaries of this power included Marion H. Conland, the primary beneficiary's wife; Elizabeth H. Conland and Susan C. Scott, his daughters; and the five Scott children (presumably children of Susan).[5] There is no indication that the trustees of the fund ever represented or held out any promise to pay or reimburse any creditor who extended credit to any beneficiary included in the trust instrument.[6]

On January 11, 1965, the trustee in bankruptcy notified the defendant fund-trustee, that he was claiming the beneficial interest of both bankrupts in said fund.[7] He also advised the defendant against making any transfers from the principal or income, except to himself as trustee in bankruptcy.

## CLAIMS OF THE PARTIES

The plaintiff contends that since the bankrupt beneficiary had the power to transfer any or all of his interest in the trust and had in fact on occasion exercised this power in part,[8] his interest in said trust vested in the trustee in bankruptcy under the provisions of the Bankruptcy Act. On the other hand, the fund-trustee claims that the trust agreement specifically prohibited the distribution of any principal or income to

---

3. Conland Trust, Art. I, §§ 1.4(a) (b) (c).

4. Exhibit B, Admissions of Fact and Genuineness of Documents filed 1/31/67.

5. Defendant's Answers to Interrogatories filed 7/14/66.

6. Admissions of Fact and Genuineness of Documents filed 1/31/67.

7. Exhibit B, Admissions of Fact and Genuineness of Documents filed 1/31/67.

8. Defendant's Answers to Interrogatories filed 7/14/66.

the beneficiary himself, his creditors, his estate or its creditors; and that this created a special limited power in the beneficiary as distinguished from a general power. As such it was exempt from execution and not transferable by operation of law or otherwise pursuant to the provisions of §§ 70(a) (3) and 70(a) (5) of the Bankruptcy Act.

## STATEMENT OF LAW

■ Article IV. of the trust agreement provided that it should be construed and administered in accordance with the laws of the State of Connecticut and that the validity of the trust created be determined by the applicable law of this State. In the absence of any conflict between the state and bankruptcy laws, state law governs questions pertaining to property rights. Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1956); Spindle v. Shreve, 111 U.S. 542, 548, 4 S.Ct. 522, 28 L. Ed. 512 (1883); Fowler v. Pennsylvania Tire Co., 326 F.2d 526, 530 (5th Cir. 1964); Reid v. Richardson, 304 F.2d 351, 353 (4th Cir. 1962); Danning v. Lederer, 232 F.2d 610, 613 (7th Cir. 1956); Horton v. Moore, 110 F.2d 189, 191 (6th Cir. 1940).

■ To the present time, no Connecticut court decision has specifically decided the primary issue raised, namely, whether the restricted alienability of the beneficiary's interest created that kind of property right, which would vest in the beneficiary's trustee in bankruptcy. Thus it is incumbent upon the court to determine the rule of law which the State Supreme Court would apply, were the case to be decided by it. Concordia Ins. Co. of Milwaukee v. School District, 282 U.S. 545, 552, 51 S.Ct. 275, 75 L. Ed. 528 (1931); Merritt-Chapman & Scott Corp. v. Public Utility Dist. No. 2, 319 F.2d 94, 103 (2nd Cir. 1963).

The trust instrument (§ 1.1) created a "discretionary trust," wherein the trustees had the absolute right to withhold and accumulate the income and add it to the principal. However, § 1.2 contained a provision which was repugnant to the accumulation provision, in that the primary beneficiary was granted power to order the trustees at any time to distribute the principal and/or income in whole or in part to such persons as were designated by him, excluding himself, his creditors, his estate and the creditors of his estate.

■ Creditors of the donee of a power of appointment cannot acquire the power itself or compel its exercise except by statute. The Bankruptcy Act provides among other things that the trustee shall be vested with the title of the bankrupt in those "powers which he might have exercised for his own benefit, but not those which he might have exercised solely for some other person[9];" and in "property * * * which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process * * *[10]."

> "By the provisions of the National Bankruptcy Act the trustee in Bankruptcy is vested with the title of the bankrupt to property, which prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under a judicial process against him, and the trustee in bankruptcy is vested with the powers of a judgment creditor having an unsatisfied execution." Restatement (Second) Trusts § 147, Comment C (1959).

> "In order that the trustee (in bankruptcy) may, under § 70(a) of the Bankruptcy Act have any rights at all, it is necessary that an interest or title of some kind be vested in the bankrupt in order that it may pass by operation of law to the trustee (in bankruptcy) * * *." Palmer v. Travelers Insurance Co., 319 F.2d 296, 299 (5th Cir. 1963).

---

9. Bankruptcy Act, § 70(a) (3), 11 U.S. C.A. § 110(a) (3).

10. Bankruptcy Act, § 70(a) (5), 11 U.S. C.A. § 110(a) (5).

■ What was the nature of this appointive power granted to the son, Charles H. Conland, under the terms of the trust? If it is a general power, with an unlimited capacity to assign or designate the distribution of the trust fund, then such an equitable interest would be considered transferable and subject to the reach of creditors, including his trustee in bankruptcy. A general power is ordinarily defined as one which may be exercised in favor of anyone, including the donee or his estate. In such case, the donor may be said to have manifested an intention to create a power primarily for the benefit of the donee. A special power, on the other hand, is one which may be exercised only in favor of a class of designated persons, not including the donee or his estate. Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 81, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035 (1939); Restatement. Property §§ 320, 324 (1940).

> "Where a general power is given, the property is surrendered to the donee to do with as he pleases for the benefit of no one but himself. Where a special power is given the object of the gift is no longer the donee, but the class to whom appointment is to be made, and the donee takes the position of one who is to direct the distribution of property for the benefit of the class, not of herself. The practical ownership of the donee of a general power and the quasi-fiduciary position of the donee of a special power lie at the root of many of the distinctions in the law of property." Leach, Cases & Materials on the Law of Future Interests, 577–578 (2d Ed. 1940).

Since Federal Estate Tax laws generally motivate the architectural structure of most trusts, let us examine the law's definition of appointive powers. Section 2041(b) (1) of the Internal Revenue Code of 1954 defines a general power of appointment as a "power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate * * *." The administrative regulations promulgated to supplement the law make the rule even more explicit:

> "A power of appointment is not a general power, if by its terms it is either (a) exercisable only in favor of one or more designated persons or classes other than the decedent or his creditors, or the decedent's estate or the creditors of his estate, or (b) expressly not exercisable in favor of the decedent or his creditors or the creditors of his estate." Federal Estate Tax Regulations § 20–2041–1(c) (1961).

Thus, a general power of appointment exists where the trust beneficiary can assign the corpus or income to himself, his estate, his creditors or the creditors of his estate. On the other hand, if this power is limited to persons other than himself, his creditors, his estate or creditors of his estate, he has what amounts to a special power of appointment with only a gift tax liability, if exercised, but without estate tax assessed against his estate. United States v. Field, 255 U.S. 257, 263, 41 S.Ct. 256, 65 L.Ed. 617 (1921).

> "The question in such cases is, not whether there are persons to whom the fund could not have been given, but whether the party executing it could have exercised it for his own benefit * * *." Platt v. Routh, 6 M. & W. 756, 151 Eng.Rep. 618 (1840). Also compare Edie v. Babington, 3 Ir.Ch.Rep. 568 (1854).

The plaintiff trustee in bankruptcy represents that since the donee has a life estate and a very broad appointive power, a court of equity should treat him as the vested owner of the appointive assets; at least for the purpose of making the trust fund subject to the claims of creditors.

■ Connecticut has consistently supported the basic precept that a debtor must assume responsibility for his debts, at least to the extent of property under his control.

> "It is the policy of our law, that all the property of a debtor should be

responsible for his debts. And his equitable estate may be taken, as well as his legal, provided it is subject to his control." Johnson v. Connecticut Bank, 21 Conn. 148, 159 (1851).

■ Its courts also recognize that legal title to appointed property does not vest in the donee or his estate, it is transmitted directly from the donor.

"It is well settled by the great weight of authority both in this country and in England that the appointee under a power of appointment derives title from the will of the donor and that the legal title to the appointed property never vests in the donee and forms no part of his estate * * *. The appointee really takes from the original testator, the donee of the power acting as a mere conduit of the former's bounty." McMurtry v. State, 111 Conn. 594, 601, 151 A. 252 (1930).

"Where a special power has been created, the donee is not in a position of an owner either as a matter of common law doctrine or the practicalities of the situation. He is in a fiduciary position with reference to the power; and his creditors have no more claim to the power and the value it represents then they would have with regard to property held by him in ,trust." Restatement, Property § 331 Comment (b) (1940).

"As a matter of both common-law doctrine and the practicalities of the situation, the donee of a special power is not the owner of the property subject thereto. He is in a fiduciary position with reference to the power and cannot derive personal benefit from its exercise. His creditors have no more claim to property covered by a special power than to property which he holds in trust. It is immaterial whether or not the donee exercises the power." Restatement, Property § 326, Comment (a) (1940).

■ Thus, because the power of appointment given the bankrupt here was a special power, he was vested with no ownership rights in the corpus of the trust and therefore the corpus could not pass to the trustee in bankruptcy under § 70(a) (5) of the Bankruptcy Act.

■ The plaintiff also claims that the powers conferred upon the donee were too broad, and because they could have been indirectly exercised for the donee's benefit the power itself passes to him under § 70(a) (3) of the Bankruptcy Act. Suggested circumventions of the settlor's interest by appointment might include the repayment to others for services rendered or to be rendered to the donee; the advancement of adequate assets to a potential surety to support a bond; a contract with an appointee for the future support of the donee; or the appointing of his wife or children with the specific intention of channeling the funds to himself. However, any of the foregoing acts would amount to an attempt to indirectly benefit the non-objects of the power and constitute "a fraud on the power." The settlor of this trust intentionally excluded the primary beneficiary from exercising the appointive powers for his own benefit. The dominant theme of the trust was to insulate the corpus and the income from the demands of the beneficiary's creditors and their representatives. Her assets created this trust fund and without her it could never have existed. Her intention should be given effect, unless some positive rule of law forbids.

"* * * (T)he latter (creditor) knows, that in creating a debt with such person, he has no right to look to that income as a means of discharging it. He is neither misled nor defrauded when the object of the testator is carried out by excluding him from any benefit of such a devise." Nichols v. Eaton, 91 U.S. 716, 726, 23 L.Ed. 254 (1875).

One conceivable exception might include the inter-vivos appointment of his wife or children as distributees, thereby indirectly satisfying his own statutory dependency obligation for their support. Cal. Civil Code §§ 174, 242; Cal. Penal

**552**

Code § 270. This circumstance would not, however, do violence to the intent of the phrase "exercised solely for some other person" under § 70(a) (3) of the Bankruptcy Act.[11] Assuming, arguendo, that the bankruptcy trustee could succeed to the bankrupt's restricted power, the terms of its restraint would not permit the exercise of it in favor of the bankrupt's creditors. Certainly, the beneficiaries under the son's will or the descendants of the settlor as ultimate heirs would be eligible to insist that no fraud be perpetrated upon the fund.

 One further issue remains for determination here, namely whether the trustee in bankruptcy is entitled to any of the income from the trust. The rights of creditors to the income of the so-called "spendthrift" trusts are controlled exclusively by statute in Connecticut. Conn. Gen.Stat. (Rev.1958) § 52–321. The standard of measure encompassed in § 70(a) (5) of the Bankruptcy Act defines the general right of the trustee to property which the bankrupt might have transferred or which might have been reached by legal process by creditors.

"The trustee * * * by virtue of his appointment, had become vested under the Bankruptcy Act, with any interest the bankrupt had in the trust fund, providing such interest at the time of the filing of the petition in bankruptcy, was capable of being assigned or transferred by the bankrupt or was subject to judicial sale or attachment * * *

"Whether the bankrupt's interest in the trust was, at the time of the bankruptcy, assignable or transferable or subject to judicial sale or attachment, are matters to be determined by the law of the State where the trust was created and the trust property is located * * *

"Incidents of alienability of personal property are determined by the federal courts according to local law. Dooley v. Pease, 180 U.S. 126, 21 S.Ct. 329, 45 L.Ed. 457. And, the same is true as to realty. Spindle v. Shreve, 111 U.S. 542, 4 S.Ct. 522, 28 L.Ed. 512. In truth, the availability of the bankrupt's trust income to his trustee in bankruptcy is to be determined by the law of the situs of the trust." Thummess v. Von Hoffman, 109 F.2d 293, 295 (3rd Cir. 1940); Also see, Danning v. Lederer, 232 F.2d 610 (7th Cir. 1956).

Standing alone § 1.1 of the trust contains all the essential requisites of a spendthrift trust. However, § 1.2 embodies provisions which are repugnant, in that they destroy not only the discretionary withholding and accumulation provisions of § 1.1, but also the provision that the income shall be for the support of the beneficiary. Counsel for both parties concede that the trust instrument does not create a spendthrift trust,[12] due to the repugnant provisions of § 1.2 of the trust instrument.

"The statute (then §§ 5872, 5873, now § 52–321) is the only authority now known to our law for the creation of spendthrift trusts. While this statute exists, our duty is satisfied in ascertaining whether a given trust is within or without it." Carter v. Brownell, 95 Conn. 216, 224, 111 A. 182, 185 (1920); Reilly v. State, 119 Conn. 508, 511, 177 A. 528 (1935).

"When property is given to trustees to pay over the income to any person, that income shall be liable in equity to the claims of creditors of the beneficiary if there is no provision for accumulation, and the trustees are not expressly authorized to withhold such income, and the income is not expressly given for the support of the beneficiary or his family. It

---

11. See Homer, Limited or Quasi-Spendthrift Trusts, 105 Trusts & Estates 951 (1966); McCoid, The Non-General Power of Appointment, 7 Vand.L.Rev. 53, 67 (1953).

12. Transcript, p. 2, Drummond v. Cowles, Civil No. 11,237, D.C., 278 F.Supp. 546, October 23, 1967.

follows that, *if any one* of the conditions there specified are present, then the income is not liable to the claims of creditors of the beneficiary." Foley v. Hastings, 107 Conn. 9, 13, 139 A. 305, 306 (1927). (Emphasis added).

Therefore, pursuant to § 52–321 of the Connecticut General Statutes, the income of the trust fund is subject to the Court's order as a court of equity, in favor of the beneficiary's creditors; and under § 70(c) of the Bankruptcy Act, the trustee is entitled to all rights of a judgment creditor. Any current income of the trust fund which had accrued and had not already been added to the principal, but was in the possession of or declared to be due to the trustee as a matter of record on November 9, 1964, shall be paid by the fund-trustee to the trustee in bankruptcy upon ascertainment and be the subject of a supplemental judgment. On all other issues, judgment shall enter for the defendant on the complaint. So ordered.

The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the Court pursuant to Rule 52(a), Fed.R.Civ.P.