S. Samuel Di Falco, S.
In this final accounting of the trustee the court is asked to determine whether the power to appoint the cotpus of the trust was validly and effectively exercised. *554 The testator died in 1915. In the paragraph of the will marked “Sixthly”, he created separate trusts, constituted as therein prescribed, for the benefit of his sons, George, Alden and Edward. The trust for Edward is the one now before the court. The will directs the trustee to pay the income to Edward “ so long as he shall live, and upon his death to pay, transfer and make over the principal of that share or trust fund to such persons or person as the said Edward P. McMurtry shall have appointed by instrument in writing executed by him, or by his last Will and Testament which said power of appointment I hereby give to him ’ ’.
Edward died on September 5, 1969, domiciled in California. His will, which was duly admitted to probate at his domicile, expressly refers to the power of appointment given to him by the will of his father, and says: “it is my express intention to and I hereby exercise said power of testamentary disposition in this my Will, and declare that all property of whatever nature and wherever situate over which I have said power of testamentary disposition, shall become part of my estate and be disposed of as herein set forth in this my Will.” Edward’s will gave substantial general legacies and directed that his residuary estate be held in trust for his children during their respective lives. These children were not in being at the time of the death of our testator. Hence if the permissible period of the rule against perpetuities were to begin as of the date of death of our testator, the absolute ownership of the property would be suspended for lives not in being at the testator’s death. However, Edward had a power to appoint the property by will or by deed, and the first question presented to the court is whether Edward’s power of appointment is a power presently exercisable within the meaning of EPTL 10-3.3, so that the permissible period of the rule against perpetuities would begin on the effective date of the exercise of the power as provided in section 10-8.1 (subd. [a], par. [1]).
This court heretofore considered the effectiveness of an appointment made by George McMurtry, Jr. (Matter of McMurtry, 35 Misc 2d 560.) There, as in the present proceeding, the testator’s son appointed the fund in further trust during the life of a person not in being at the time of his father’s death. In that case, however, the donee had died in November, 1958, prior to amendments in presently applicable statutes and the question here presented was not there considered. The court there held that the exercise of the power was to be read into the will of the creator of the power and the appointment was consequently *555 invalid. We must look now at the pertinent statutory history as it thereafter evolved.
In 1960 the Legislature, upon recommendation of the Law Revision Commission, added section 179-a to the Real Property Law and amended other sections in relation to the rule against perpetuities. Section 179-a provided that “the period during which the absolute power of alienation of real property or the absolute ownership of personal property may be suspended by an instrument in execution of an absolute power of disposition exercisable at any time after the creation of the power shall not be computed from the time of the creation of the power but shall be computed from the date such instrument takes effect ”. (L 1960, ch. 450.) In its recommendation to the Legislature, the Law Revision Commission said: “In most common-law jurisdictions this rule of relation-back is applied to all special powers, and to general testamentary power, but not to general powers presently exercisable. A dictum in Farmers Loan & Trust Co. v. Kip, 192 N. Y. 266, 276-277, 85 N.E. 59, 62 (1908), indicates that the rule of relation-back is not applicable to an absolute power of disposition given to the owner of a particular estate for life or years, or to a power of disposition that is considered a fee under sections 150 and 151. The Commission believes that legislation is desirable to make clear, in accordance with this doctrine, that where the power under which an interest is created is an absolute power of disposition, exercisable at any time after the creation of the power, the permissible period is to be computed from the date the instrument in execution of the power takes effect.” (Report of N. Y. Law Rev. Comm., 1960, pp. 296-297).
It is to be noted that section 179-a did not refer to a power of appointment, but rather to “an absolute power of disposition ’ ’, which was defined in section 153. The author of the Law Revision Commission study expressed the opinion that the new section ‘1 would not include a power accompanied by a trust because ordinarily the beneficiary of the trust would have no power to terminate the trust and convey the entire fee.” (Pasley, The 1960 Amendments to the New York Statutes on Perpetuities and Powers of Appointment, 45 Cornell L. Q. 679, 706; see, also, Report of N. Y. Law Rev. Comm., 1960, pp. 339-340.)
In 1964, the Legislature substantially revised article 5 of the Real Property Law upon the recommendation of the Commission on the Law of Estates and based upon proposals of Professor Richard R. Powell, its Counsel for that study. (L. 1964, *556 ch. 864; Third Report of Temporary Comm, on Law of Estates, 1964, pp. 39, 601 et seq). The common law of powers was established as the law of New York, except as otherwise specifically modified. (Real Property Law, § 130.) Section 154 declared that “ the period during which the absolute power of alienation of real property, or the absolute ownership of personal property, or the vesting of a future interest may be suspended or postponed by an instrument exercising a power of appointment begins * # * in the case of an instrument exercising a general power, presently exercisable, on the effective date of the instrument of exercise ”. (L. 1964, ch. 864.) The comment upon that section was that it “is both good common law, as formulated in the Restatement of Property, § 391, and good New York law as it evolved in Equitable Trust Co. v. Pratt, 117 Misc. 708, affd. 206 App. Div. 689, 1923, and in Schenectady Trust Co. v. Emmons, 261 App. Div. 154, affd. 286 N. Y. 626, 1941; and as it finally obtained statutory formulation in present section 179-a (1), as it was amended in 1960. It rests on the sound conclusion that property is not tied up, so as to call for the application of the rule against perpetuities, so long as there exists a person who can wipe the slate clean. A person having a general power presently exercisable is such a person ”. (N. Y. Legis. Doc., 1964, No. 6.9B, p. 625; Third Report of Temporary Comm, on Law of Estates, p. 625.) In the enactment of the Estates, Powers and Trusts Law (L. 1966, ch. 952) section 154 was combined with section 155 in revised form, but the rule as stated in section 154 remained unchanged in the new statute (EPTL 10-8.1; Revisers’ Note).
In the revision of 1964, a power of appointment was classified as general ‘ ‘ to the extent that it is exercisable wholly in favor of the donee, his estate, his creditors or creditors of his estate.” (§ 133). This classification of powers which are general and those which are special was adopted from the Internal Revenue Code and, as the Revisers’ 1964 Comment points out, the use of the tax classificatioh “ for the fixing of the rights of creditors of the donee is believed likely to make the law both simpler and more rational ”. (Third Report of Comm, on Law of Estates [1964], p. 1203.) The definition of a general power, as expressed in section 133, has been carried into EPTL 10-3.2 without change. With respect to section 10-3.2, Professor I. Leo Glasser, who was largely responsible for the 1966 modifications in article 10, says in the Practice Commentary: ‘ ‘ The classification of powers as being either general or special is in accord with common law usage. * * * The definition of a general power con- *557 tamed in paragraph (b) is derived from the Internal Revenue Code of 1954, § 2041(b) (1) except for the word ‘ wholly ’ which was borrowed from 3 Restatement, Property, § 320(1) (a), (b). This definition is broader than the one contained in the Restatement in that it includes the donee’s creditors and the creditors of his estate. The use of the disjunctive would indicate that a power which is exercisable in favor of the donee or his estate, or his creditors, or the creditors of his estate is a general power. It has been so held for federal estate tax purposes.” (McKinney’s, Cons. Laws of N. Y., Book 17B, EPTL).
As revised in 1964, section 321 defined a power of appointment, presently exercisable, as one where “ the donor has not manifested an intent that its exercise shall be postponed ”, a definition taken from section 321 of the Restatement of Property. Powers were otherwise classified as testamentary or as postponed. When this section was incorporated in EPTL 10-3.3, its text was altered to read: “ A power of appointment is presently exercisable if it may be exercised by the donee, during his lifetime or by his written will, at any time after its creation, and does not include a postponed power as described in paragraph (d) ”. The Revisers’ note is to the effect that the section ‘ ‘ re-enacts RPL § 134 without substantive change. Changes in form are keyed to the drafting pattern of the new law ”. (Fifth Report of Comm, on Law of Estates [1966], p. 2358.) With respect to the change in text, Professor Glasser, in his Practice Commentary to section 10-3.3, wrote: “ A presently exercisable power of appointment has been more explicitly defined in paragraph (b) than in the former statute which was derived from 3 Restatement, Property, § 321. Such a power is exercisable by the donee at any time after it is created, by an inter-vivos disposition or by his will (See EPTL 10-6.2(a) (3)). A power which is exercisable by the donee at any time after its creation but only during his lifetime and not by will is also one which is presently exercisable. ’ ’ (McKinney’s Cons. Laws of N. Y., Book 17B, EPTL 10-3.3).
While it seems clear that former section 179-a of the Real Property Law, did not cover a power of appointment in a trust measured by the life of the donee, it seems equally clear that the revised statutes governing powers were intended to cover such a power. Former section 139 of the Real Property Law governed the rights of creditors of a donee of a general power presently exercisable (now EPTL 10-7.2). The 1964 comment to the recommended section read: “ Where the power to appoint is both general and presently exercisable, the donee has, in *558 substance, the equivalent of ownership as to the appointive assets. His creditors should be able to reach that which their debtor can appropriate to his own uses. The property thus made available can be either a present or a future interest. The right of the creditor is, in no way, dependent upon the exercise of the power. The mere existence of the power is the operative fact essential to the right of the creditor. This is not common law. It stems from a desirable change introduced into the statutory law of New York in 1830. It does, however, free our statutory law from the frustrations read into it by Cutting v. Cutting [86 N. Y. 522].” (Third Report of Temporary Comm, on Law of Estates, pp. 617-618; emphasis added). The cited case held that the New York statutes preserved to creditors rights which existed against property before subjecting it to a power or rights that attached by the granting of a power of disposition to be used in the lifetime of the donee for his own benefit, but gave no rights to creditors of a donee whose power of appointment was coupled with a trust.
Moreover, the common law of powers is retained as the law of this State. (EPTL 10-1.1.) It was the rule of the common law that a general power of ■ appointment, exercisable at any time by will or by deed, was to be judged in respect of the rule against perpetuities as of the time of its exercise, even though the power was coupled with a trust for the life of the donee. (Farmers’ Loan & Trust Co. v. Kip, 192 N. Y. 266, 276; 9B Rohan, N. Y. Civ. Prac. par. 10-8.1, pp. 10-138, 10-139; 5 Powell, Real Property, par. 787, pp. 670-671; Restatement, Property, § 391, comment b; also Restatement, Property, Introductory Note to chapter 25, p. 1813; 1 Scott, Trusts [3d ed.], p. 599.)
It would seem clear that the power granted by the testator to his son Edward is a general power of appointment. There are no limitations or exclusions. He had the power to appoint to any person, which would include himself, his estate, his creditors, or the creditors of his estate. No one disputes the fact that he could appoint to his creditors, to his estate or to the creditors of his estate. It is argued that he could not effectively appoint to himself because the appointment would vest an interest in possession only after Edward’s death. True, the will does require the trustee to hold the property during Edward’s lifetime and to pay it over after his death, and in the intervening period Edward had the right to receive the trust income. The right to receive the income of a trust is not transferable (EPTL 7-1.5), and hence Edward could not assign his right to receive income. He could, however, appoint to himself by an *559 instrument in writing and could freely assign his remainder interest. There is nothing in the testator’s will which prohibits the donee from appointing to himself by deed. The fact that the appointee could not get possession until the trust ends is not important so long as the trust will end within the permissible period.
The court, therefore, holds that the validity of the appointment by Edward is to be judged as of the time of the exercise, and as so viewed the appointment is valid. Edward blended the appointive property with his own property, and the sum remaining is to be paid to his personal representative.
The petition also asks the court to determine that the property is distributable without further deduction for New York transfer or estate taxes. The State Tax Commission objects to the granting of such relief. The Tax Law prescribes the procedure for fixing and determining estate taxes and such procedure must be followed.
The petition requests the court to fix the compensation of the attorneys for the accounting trustee. The attorneys are directed to file an affidavit of legal services. The court will fix their compensation upon the settlement of the decree herein.