Mathew John RENO, individually and as executor of the estate of Floyd C. Reno, Sr., deceased, and Harriet Reno Underwood, Appellants (Plaintiffs),

v.

Dollie M. RENO, Appellee (Defendant).

No. 5360.

Supreme Court of Wyoming.

March 26, 1981.

Henry A. Burgess (argued), and Rebecca W. Thomson (argued), Burgess & Davis, Sheridan, for appellants.

William D. Omohundro (argued), Buffalo, and Jeffrey M. Kohlhas, legal intern, for appellee.

Before ROSE, C. J.*, McCLINTOCK, RAPER **, THOMAS and ROONEY, JJ.

RAPER, Justice.

This appeal arises from an order granting a motion for a judgment on the pleadings. Two issues need be considered on appeal. The first concerns the creation of a special testamentary power of appointment. We must decide whether a mineral deed executed pursuant to a property settlement agreement conveyed a life estate with a special testamentary power of appointment or conveyed a fee simple absolute. Finding the former, we then must consider whether the property is included in testator's estate for purposes of computing the statutory one-fourth share of a spouse making an election pursuant to § 2–4–101, W.S.1977.[1]

---

\* Chief Justice since January 5, 1981.

\*\* Chief Justice at time of oral argument.

1. Section 2–4–101, W.S.1977:

"Any adult of sound mind, may dispose by will of all his property except what is sufficient to pay his debts, or what is allowed by law to husband and family or wife and family; * * * provided, further, any married person leaving surviving him any children by a previous marriage, or any descendant or descendants of such child or children, and leaving surviving him no child the issue of the marriage existing at the time of the death of such married person, nor any descendant of any such child the fruit of said last marriage, may by will to others than the surviving spouse dispose of not exceeding three-fourths of the property of such married person remaining after the payment of his or her debts. In the cases mentioned in this last proviso, if a deceased spouse shall by will deprive the surviving spouse of more than

We will reverse.

After instituting divorce proceedings, Harriet Reno and Floyd Reno, the deceased, in 1972 entered into a contractual agreement, dividing property acquired during the life of their marriage. The agreement provided as follows:

### "MINERAL AND ROYALTY INTERESTS

"1. The parties hereto own approximately 12,000 mineral acres. A description thereof is attached to this agreement and marked Exhibit A. It is the intention of the parties that each should own an undivided one-half (½) of all oil, gas and other minerals which may be owned by either party to this agreement, whether described in Exhibit A or not.

"2. To accomplish the desires of the parties, they agree to immediately execute and deliver appropriate instruments of conveyance in order that each shall be an owner of an undivided one-half (½) of all oil, gas and other minerals owned by either party hereto.

"3. The parties further agree that the ownership of said minerals or mineral interest may not be conveyed, transferred, sold, assigned, pledged or mortgaged except by the will of either party to this agreement. Said devise of the mineral

three-fourths of the property of such deceased spouse remaining after the payment of his debts, it shall be optional with the surviving spouse, in the manner and within the time mentioned in the first proviso in this section, and not otherwise, to elect to take one-fourth of the estate, real and personal, of the deceased spouse in lieu of the provision for such surviving spouse as made in the will of the deceased spouse. In default of such election the will shall govern in the distribution of the estate, but in each of the above cases, in not less than sixty (60) days following the admission of the will to probate, the judge of the probate court shall advise the surviving spouse of his or her right of election and shall explain fully such right and the consequence thereof. * * * "
The pertinent parts of this section have been superceded by § 2–5–101(a), W.S.1977, 1980 Cum.Supp.:

and royalty interest may be made only to that class of heirs of the parties who are the natural children born as issue of this marriage or to said children's natural children. The parties hereto shall be free to devise within said class as he or she shall deem best. The conveyances previously referred to shall contain the restriction herein set forth with the additional provision that the parties are free to enter into an oil, gas or mineral lease beyond their natural lives."

Pursuant to the agreement, the Renos conveyed their jointly held property to a third party who conveyed it back as follows:

"KNOW ALL MEN BY THESE PRESENTS, that GERALDINE McKINNEY, a widow, of Gillette, Wyoming, for and in consideration of the sum of Ten Dollars ($10.00), the receipt and sufficienty [sic] being hereby acknowledged, does hereby grant, bragain [bargain], sell, transfer, assign and deliver unto HARRIET P. RENO, whose mailing address is Midwest, Wyoming, hereinafter called GRANTEE, an undivided one-half (½) interest on all oil, gas and other minerals owned by GRANTOR, in and under and that may be produced from lands situate in Campbell County and Converse County, Wyoming, as described in Exhibit A attached hereto which is

"(a) If a married person domiciled in this state shall by will deprive the surviving spouse of more than the elective share, as hereafter set forth, of the property which is subject to disposition under the will, reduced by funeral and administration expenses, homestead allowance, family allowances and exemption, and enforceable claims, the surviving spouse has a right of election to take an elective share of that property as follows:
"(i) One-half (½) if there are no surviving issue of the decedent, or if the surviving spouse is also a parent of any of the surviving issue of the decedent; or
"(ii) One-fourth (¼), if the surviving spouse is not the parent of any surviving issue of the decedent."
However, the change in the statute in no way affects the result of this case; it being the same under either.

hereby made a part hereof and unto FLOYD C. RENO, whose mailing address is Midwest, Wyoming, the remaining one-half (½) interest of all oil, gas and other minerals owned by GRANTOR in and under and that may be produced from the lands described in Exhibit A attached hereto.

"IT IS THE INTENTION OF GRANTOR to convey to each GRANTEE herein an undivided one'half [one-half] (½) of the whole interest conveyed to GRANTOR by a mineral Quit-Claim Deed from GRANTEES herein, this same date.

"EACH GRANTEE, by accepting this conveyance, acknowledges that his or her interest is subject to the terms and conditions of written agreement between FLOYD C. RENO and HARRIET P. RENO, dated October 4, 1972, and filed in Civil Action No. 6446, in the District Court of the Fourth Judicial District in and for Campbell County, Wyoming, said civil action being entitled FLOYD C. RENO, Plaintiff, vs. HARRIET P. RENO, Defendant."

Before his death in 1976, Floyd Reno remarried. Following his death, his second wife, Dollie Reno (appellee in this action), elected to take against his will, which this court held she timely elected to do in *Matter of Estate of Reno*, Wyo.1979, 604 P.2d 550. The effect of this election was to entitle her as widow to one quarter of the probate estate. Appellants, children of Floyd and Harriet Reno, then sought a declaratory judgment ruling that the mineral and royalty interests transferred to the deceased by Geraldine McKinney pursuant to the property settlement agreement executed between himself and his wife, was not part of the probate estate. Appellants' theory was that what Floyd Reno had received in the transaction was a life estate with a special testamentary power of appointment. If the appellants' theory is correct, the property did not go into the probate estate and, therefore, appellee was not entitled to any of that particular property despite her election.

All the parties moved for a judgment on the pleadings. The district court granted

appellee's motion. Appellants claim that the trial court erred both in granting appellee's motion and in denying their own motion.

This court has previously held that when a party moves for a judgment on the pleadings "it is the rule that if the undisputed facts appearing in the pleadings * * * supplemented by any facts of which the trial court will take judicial notice, establish that no relief can be granted, the movant is entitled to judgment." *Bon v. Lemp*, Wyo. 1968, 444 P.2d 333, 335. Thus, if there is an issue of fact on the face of the pleadings, the motion must be denied.

Appellee contends that there was no issue of fact because the deed conveying the property to Floyd Reno plainly and unambiguously gave him a fee simple absolute. Appellee further cites § 34–2–101, W.S. 1977, which provides:

"The term 'heirs,' or other words of inheritance, shall not be necessary to create or convey an estate in fee simple, and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant."

Appellee then argues that even though no magic words were used to create a fee simple, since no intent to pass a lesser estate is found in the granting clause, the presumption mandated by the statute carries the day. However, in *McGinnis v. McGinnis*, Wyo.1964, 391 P.2d 927, 931, this court looked at the entire instrument in order to determine whether there was an intent to pass less than a fee simple under § 35–2–101, supra.

In this case when the instrument as a whole is studied, it is apparent that less than a fee simple was intended. The deed specifically says the conveyance was "subject to the terms and conditions of written agreement between FLOYD C. RENO and HARRIETT P. RENO," thereby incorporating the agreement. Thus, if the agreement was designed to give the parties only a life estate with a power of appointment, then because the conveyance is subject to the

terms of that agreement, that limitation of the estate must be necessarily implied by the terms of the grant.

The question then becomes what was intended under the agreement. Normally the meaning of a contract is decided as a matter of law.

"* * * However, when the terms of the contract are unclear on their face and doubt arises from the contract itself as to what the parties meant, then extrinsic evidence becomes admissible in order to establish the parties' original intent and, thus, aid the court in construing the contract accordingly. * * *" *Madison v. Marlatt*, Wyo.1980, 619 P.2d 708 at 714.

The contract here is clear on its face. It provides that conveyance may be made only through devise to "that class of heirs" who are the parties' natural children. The intent to pass a lesser estate is clearly expressed.

Next we must determine whether a life estate with power of appointment was conveyed. It is generally accepted that "[n]o particular form of words is necessary to create a power of appointment." *In re Estate of Rosecrans*, 1971, 92 Cal.Rptr. 680, 4 Cal.3d 34, 480 P.2d 296, 298. "A conveyance creates a power of appointment if the conveyor manifests an intent that it shall do so and if the conveyance is otherwise effective." Restatement of Property § 323 (1940).

As Comment c to § 323 of the Restatement elaborates:

"Sometimes a limitation which would otherwise create an estate in fee simple absolute contains words purporting to give to the transferee a power of disposition which is restricted as to objects or as to time or manner of exercise. This restricted power of disposition tends to indicate that the transferor did not intend to give to the donee the unrestricted power of disposition which is an attribute of an estate in fee simple absolute. Therefore, if there is no specific language defining the transferee's estate and no other contrary indications of intent, the transferee has, not an estate in fee sim-

ple, but a life estate with a power of appointment. * * *"

█ In the present case, the decedent took the property subject to the limitations imposed by the property settlement, i. e., he could only transfer the property by devise and then only to that class of heirs who were the natural children born as issue of his first marriage. The effect of such a limitation is indistinguishable from a special testamentary power of appointment. A special power is one which can be exercised only in favor of a specific class of persons. *In re Estate of Spencer*, Iowa 1975, 232 N.W.2d 491; *Drummond v. Cowles*, D.Conn. 1968, 278 F.Supp. 546, 550; Restatement of Property § 320(2). See also, *Fiduciary Trust Company v. First National Bank of Colorado Springs*, Colorado, 1962, 344 Mass. 1, 181 N.E.2d 6. A power is testamentary if it is only exercisable by devise. *In re Estate of McMurtry*, 1971, 68 Misc.2d 553, 326 N.Y.S.2d 965; Restatement of Property § 321. Together they operate to give the donee of the power the ability to transfer by devise title to the members of the enumerated class, which is precisely the power the property agreement in the case at bar intended decedent to have. Based upon the clear intent of the mineral deed and the property settlement, we must conclude that as a matter of law the decedent obtained a life estate with a special testamentary power of appointment.

However, before we can determine if it was error for the district court to deny appellants' motion for judgment on the pleadings, we must consider whether property, over which a decedent has a special testamentary power, goes into the estate for the purpose of computing a surviving spouse's elected share. Section 332(2) of the Restatement states:

"Property covered by a power of appointment is not included among the assets in which a surviving spouse of the donee is entitled to share under statutes permitting such spouse, upon renouncing interests given by will, to receive a specified share of the decedent's property."

As explained further in the comments to § 332 of the Restatement:

"a. *Scope of application of these rules.* The rules stated in this Section apply to all powers, including general and special powers, testamentary powers and powers presently exercisable. It is immaterial whether the power is exercised and what appointment, if any, the donee makes. These rules apply despite the existence of a statute providing in substance that where an absolute power of disposition is given to the owner of a particular estate for life or for years, such estate is turned into an estate in fee simple absolute in respect to the rights of creditors, purchasers and incumbrances."

This appears to be the universal rule in this country. *Fiske v. Warner*, 1954, 99 N.H. 236, 109 A.2d 37. The rationale for this is "that the appointee under a power of appointment derives title from * * * the donor, and that the legal title to the appointed property never vests in the donee and forms no part of his estate." *McMurtry v. State*, 1930, 111 Conn. 594, 151 A. 252, 255.

We see no reason to deviate from the general rule, and thus we must conclude that since the decedent's interest in the property was a life estate with a special power of appointment, the property is not included as part of the decedent's estate for the purpose of computing his surviving spouses's elective share.[2] Therefore, we find that the district court erred in not only granting appellee's motion for judgment on the pleadings but also in denying appellants'. We accordingly reverse the judgment and remand the case to the district court with direction to vacate its judgment on the pleadings in favor of the defendant and enter a judgment in favor of the plaintiffs.

Reversed with directions.

THOMAS, Justice, dissenting.

I dissent from the views of the majority in this case. I would affirm the judgment of the district court. This is not because I have any quarrel with the technical accuracy of the conclusion drawn in the majority opinion that Floyd C. Reno, Sr., following the 1972 agreement with Harriet Reno, was possessed only of a life estate with a special power of appointment. It is my conclusion, however, that the appellants are estopped from asserting that Floyd C. Reno, Sr., was possessed only of a life estate coupled with the power of appointment. Furthermore, I am persuaded that included in the property held by the estate of Floyd C. Reno, Sr., deceased, there is a 25 percent undivided mineral interest in the lands which were the subject of the 1972 agreement and which is different property from the life estate of Floyd C. Reno, Sr.

Other events which are not referred to in the majority opinion must be recognized. The situation is not unlike witnessing a clever quarterback on a football field. It is sometimes possible to lose track of the ball. The 25 percent undivided mineral interest in the lands in issue here, which is different from Floyd C. Reno, Sr.'s interest, became a part of the estate property as a product of an interesting series of events. First of all it should be noted that the interest which the majority opinion describes as a life estate subject to a power of appointment was inventoried and appraised in the estate of Floyd C. Reno, Sr., both by an Inventory and Appraisement filed on March 4, 1977, and by an Amended Inventory and Appraisement filed July 27, 1977. In the Amended Inventory and Appraisement the value of the mineral interest was increased, and it seems to have been the deliberate intent to include that property in the estate of Floyd C. Reno, Sr. Thereafter, on April 28, 1977, Harriet P. Reno and Mathew John Reno and Harriet Reno Underwood entered into an agreement which provided that Harriet P. Reno had conveyed to the estate

---

**2.** It should be further noted that in a case in which a special power is not exercised and no takers in default are provided, it is within a court's equitable power to distribute the property in accord with the intent of the donor of the power. *In re Estate of Spencer, supra,* 232 N.W.2d at 498; Restatement of Property § 367(4). But since we need not decide whether the power was in fact exercised here or to whom the property should go if in fact it was not exercised, we decline to address the issue.

of Floyd C. Reno, Sr., a part of her interest in and to the minerals which had been the subject of the 1972 agreement between her and Floyd C. Reno, Sr. The agreement identified Mathew John Reno and Harriet Reno Underwood as two of the devisees under the Last Will and Testament of Floyd C. Reno, Sr. It noted that they were devised an interest in the minerals in and under the lands described in an executor's deed from Mathew John Reno to Harriet P. Reno and that they had consented to the sale of that mineral interest. The apparent consideration was the conveyance of an equivalent interest by the Reno estate to Harriet P. Reno.

By a mineral deed executed on April 17, 1978, which was recorded on April 21, 1978, Harriet P. Reno did convey to Mathew J. Reno, executor of the estate of Floyd C. Reno, Sr., an undivided 50 percent of her interest in the oil and gas and other minerals which were acquired by virtue of the mineral deed dated October 4, 1972, from Geraldine McKinney. (This transaction is described in some detail in the majority opinion.) In the meantime, by an executor's deed executed on June 20, 1977, and recorded June 28, 1977, Mathew John Reno, as executor of the estate of Floyd C. Reno, Sr., deceased, conveyed to Harriet P. Reno an undivided one-half interest in the minerals held by lands of Floyd C. Reno, Sr., which had previously been inventoried and appraised in his estate.

On June 16, 1977, Mathew J. Reno filed a Return and Account of Sale of Real Property in the Estate of Floyd C. Reno, Sr., Deceased, pursuant to which he reported the transaction described above. On the same date there was filed a Consent to Sale of Real Property in the estate proceeding executed by Mathew John Reno and Harriet Reno Underwood. On June 17, 1977, the district judge in his probate capacity executed and there was caused to be filed an Order Confirming Sale of Real Property, which confirmed the transaction set forth above. In so doing the appellants invoked the authority of the District Court of the Fourth Judicial District, and created a record which would cause others to believe that the transaction had been endorsed by the court. It is noteworthy that consistently with the position previously taken these mineral interests were included as property of the estate in the Final Accounting and Petition for Distribution which was filed by Mathew John Reno on November 23, 1977.

By virtue of these machinations it is my opinion that these appellants not only succeeded in causing to be included in the estate of Floyd C. Reno, Sr., Deceased, 25 percent of an undivided mineral interest in the lands previously owned by Floyd C. Reno, Sr., and Harriet P. Reno, which were not held by Floyd C. Reno, Sr., as a life estate subject to a power of appointment, but they took a position with respect to these matters which has the effect of invoking a judicial estoppel against them. They should be estopped from asserting in this case that the mineral interests are not a part of the estate of Floyd C. Reno, Sr., deceased. I take no position as to how other parties who might have an interest in such lands should be treated, but would hold only that these two parties, the appellants here, are foreclosed from asserting the contentions they present in this appeal relative to the limited nature of the interest owned by Floyd C. Reno, Sr.

The doctrine of judicial estoppel has been invoked on prior occasions by this court. *Snell v. Ruppert*, Wyo., 582 P.2d 916 (1978); *Gray v. Fitzhugh*, Wyo., 576 P.2d 88 (1978); *Allen v. Allen*, Wyo., 550 P.2d 1137 (1976); *Hatten Realty Co. v. Baylies*, 42 Wyo. 69, 290 P. 561 (1930). In my judgment this language from *Allen v. Allen* is apt and applicable:

"The principle, while denominated judicial estoppel, is sometimes referred to as a doctrine which estops a party to play fast and loose with the courts or to trifle with judicial proceedings. It is an expression of the maxim that one cannot blow hot and cold in the same breath. A party will just not be allowed to maintain inconsistent positions in judicial proceedings, as here. 31 C.J.S. Estoppel § 117, pp. 624–625. [Footnote omitted.]

" * * * Following the same reasoning reached in *Hatten*, it would be highly inequitable for the defendant to have a decree in his divorce case holding the property not to be his and at the same time be held the owner of an interest in this proceeding. It is that very inconsistency that judicial estoppel will not tolerate. Defendant's statements in the previous action are the very highest order of evidence against him and are entitled to judicial sanctity. He cannot play hanky-panky with the courts of this state and thus interfere with the integrity of the judicial system. * * *

"We are not a bit concerned that the matter of judicial estoppel was not raised in the lower court or argued by either of the parties. This court has general superintending control over all the courts of the state [footnote omitted] and the Wyoming judicial system in general. It is our duty to protect its integrity and prohibit dealing lightly with its proceedings. We are at liberty to decide a case upon any point which in our opinion the ends of justice require, [footnote omitted] particularly on a point so fundamental that we must take cognizance of it. [Footnote omitted]" 550 P.2d at 1142.

The same comment is appropriate with respect to language from *Snell v. Ruppert*, supra:

" * * * By failing to raise at this obviously appropriate juncture an assertion of ownership, plaintiffs' predecessors not only interrupted the continuous nature of their ownership claim, but erected as well the barrier of judicial estoppel to any future assertion of ownership by themselves or their successor in interest, the plaintiffs herein. One cannot blow hot and then cold on the same point in separate judicial proceedings. [Citations.] In effect, the former proceedings quieted title in the defendant as far as plaintiffs are concerned. Such an estoppel result may well be particularly appropriate in the situation at bar in the light of the fact that plaintiffs and their predecessors in interest, as revealed by the record, are closely related by blood and marriage." 582 P.2d at 918.

The appellants by their conduct have subjected themselves to the accusations that they wanted to play "fast and loose with the courts" and attempted to "blow hot and cold in the same breath." It seems to me that the district court was concerned that the appellants were attempting to use and misuse the court "and thus interfere with the integrity of the judicial system." I agree with that concern, and for that reason I would affirm the judgment of the district court.