## MARY E. LAVENDER et al. vs. BENJAMIN ROSENHEIM, TRUSTEE, et al.

*Devise and Legacy—Donee Answering Description at Date of Will—Bequest to the Wife of A.—Subsequent Divorce.*

The object or donee of a bequest is to be ascertained by considering what person answered the description of the donee at the time the will was executed.

When property is bequeathed to the wife of A., and A. has a wife at the date of the will, she is entitled to the property, although afterwards she is divorced from A. and is not his wife at the time of distribution.

By her will, made in 1889 and probated in 1891, a testatrix gave all of the residue of her estate to a trustee, with directions to pay the income to her son Oliver and, upon his death, the corpus of the estate to become the property of his children. In case he should die without issue, the testatrix gave certain legacies and all the rest and residue, after payment of the legacies, "unto the wife of my said son Oliver, absolutely." At the time of the execution of the will, Mary A. was the wife of Oliver. She obtained a divorce from him in 1898, and afterwards married another. Oliver died without leaving children. *Held,* that his former wife, Mary A., is entitled to the residue of the estate under the bequest to her as the wife of Oliver.

*Decided February 17th, 1909.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Thomas G. Hayes* and *Daniel B. Chambers,* for the appellants.

*Eli Frank* and *Myer Rosenbush,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This appeal involves the construction of the will of Mrs. Elizabeth Whalen, executed December 19th, 1889, and probated February 18th, 1891. The particular clause which we are required to interpret is the following: "I give, devise and bequeath all the rest and residue of my estate, after the payment of the above-mentioned legacies, unto the wife of my said son, Oliver R. Whalen, absolutely." The preceding provisions of the will need not be transcribed; it will be sufficient to state their substance and effect. The testatrix devised and bequeathed all of her estate, of every kind and nature, to Benjamin Rosenheim, in trust to collect the rents, issues and profits thereof, and to pay over such part as he should think proper, to her son, Oliver R. Whalen, during his life, and upon his death the corpus of said estate to become the property of the child or children of said son surviving him. In event of his death without such surviving child or children, she directed the payment of four legacies of $200 each to certain nieces and nephews, and then immediately follows the residuary devise and bequest above transcribed. The case originated in a bill filed by the trustee under the will to obtain the direction of the Court as to the distribution of the trust estate, the son having died without surviving child or children.

The heirs at law and distributees of the testatrix and the appellants, Mary A. Lavender and Frank J. Lavender, her husband, were parties defendants in that proceeding, Mary A. Lavender being the same person who was the wife of the son at the date of said will, but who was afterwards divorced from the said Oliver R. Whalen. Some of the defendants were summoned and some were brought in under order of publication; all those answering admitted all the allegations

of fact of the bill; a decree *pro confesso* was entered against those not appearing under the order of publication, and the general replication was filed to the answers of those who did answer, and the case was heard upon the following agreed statement of facts filed in the cause by counsel for the plaintiff and the counsel for the defendants:

"That Mary A. Whalen was married to Oliver R. Whalen, Oct. 31st, 1889; that she knew testatrix; lived in the same house with her, and was present at time testatrix made her will, which will was executed Dec. 19th, 1889; that thereafter on Dec. 13th, 1891, testatrix died, and at the time of her death Mary A. Whalen, now Lavender, was the wife of Oliver R. Whalen, son of testatrix; that on March 4th, 1898, said Mary A. Whalen, upon her application, was granted a divorce *a vinculo matrimonii* from said Oliver R. Whalen on grounds of abandonment; that on or about March 19th, 1899, said Mary A. Whalen married Frank J. Lavender; that said Mary A. Whalen was the only wife said Oliver R. Whalen ever had, and that said Oliver R. Whalen at time of his death had no child, or children, or descendants of children, nor did he ever have any children.

"It is further agreed that all of the material allegations of the bill of complaint, save and except such allegations as may affect the legal construction of the will of Elizabeth Whalen are hereby admitted to be true."

The Circuit Court of Baltimore City decreed that said residuary clause of said will is inoperative and void as to the residuary estate in the hands of the trustee, and therefore had descended to, and should be distributed among, the heirs at law and distributees of the testatrix, and that the same should be sold by said Benjamin Rosenheim for the purpose of such distribution, he being appointed trustee for that purpose by said decree, and from that decree Mr. and Mrs. Lavender have appealed.

The effect of this decree is to establish the intestacy of Mrs. Whalen as to all of her estate except the four legacies of $200 each, aggregating, as far as the value of the estate can be

estimated from the averments of the bill, less than one-fifth of the estate; and this result is worked in spite of the emphatic manifestation in the language of the will of a contrary purpose on her part. Such a result is sometimes forced upon Courts by the necessary application of established rules of construction to the plain language of a will, but it is never reached if it can be avoided without violation of clearly controlling legal principles. The abhorrence of Courts to intestacy, under a will, may be likened to the abhorrence of nature to a vacuum, and that "axiom in the physical sciences may be appropriately transferred to a judicial question of this nature," as was said by JUDGE YELLOTT in *Johnson* v. *Hines,* 61 Md. 131, in speaking of a somewhat similar axiom.

The purpose of the testatrix to dispose of the whole of her estate appears in the *first* clause of the will, in which she devises and bequeathes "all my estate, real, personal and mixed of which I may die seised and possessed" to the trustee therein named, "subject, however, to the conditions, uses, limitations and trusts hereinafter mentioned;" and this purpose is again declared in the *last* clause relating to the disposition of her estate, wherein she devises and bequeathes "to the wife of my son, Oliver R. Whalen, absolutely," "all the rest and residue of my estate, after the payment of the above legacies."

The repugnance of Courts to construe wills so as to declare an intestacy is expressed by the highest Courts in England and America and by all the standard text-books upon wills.

*Mr. Jarman,* Vol. 1, star page 809, says: "It has been generally thought that a very clear intention must be indicated, in order to postpone the vesting under a residuary bequest, since intestacy is often the consequence of holding it to be contingent, or at least (and this is the material consideration) such *may be* its effect; for in construing wills we must look indifferently at actual and possible events."

In *Booth* v. *Booth,* 4 Vesey, 407, the Master of the Rolls said: "That there is a difference between a bequest of a *legacy* and a residue with reference to this point cannot be denied

either upon principle or precedent." And in *West* v. *West,* 4 Giffard, 202, the Court said: "There is certainly a strong disposition in the Court to construe a residuary clause so as to prevent an intestacy with regard to any part of the testator's property." And in *Lett* v. *Randall,* 10 Simons, 115, the same Court said: "One does not like to construe a will so as to make the testator die intestate, unless it is impossible so to construe it as to give effect to what may be fairly collected to have been his intention."

In *Dulany* v. *Middleton,* 72 Md. 75, JUDGE ALVEY said: "It is very clear, from all the provisions of the will, that the testator intended to dispose of all his estate, and that he did not contemplate the possibility of a state of intestacy as to any part of his estate, *with respect to any event* or for any interval of time. Besides this, the law favors the vesting of estates at the earliest moment that is consistent with the apparent intent of the testator or the general scheme of his will. The general principle is that any devise or bequest in favor of a person or persons *in esse,* whether such persons be individualized or treated as a class, unless there be some clearly expressed desire or some manifest reason for suspending or deferring the time of vesting confers an immediate vested interest, though the time of possession or enjoyment may be postponed. This principle is especially enforced in regard to residuary bequests, since intestacy is generally the consequence of holding them to be contingent. As said by LORD ALVANLEY, M. R., in *Booth* v. *Booth,* 4 Vesey, 407: 'Every intendment is to be made against holding a man to die intestate, who sits down to dispose of the residue of his property.' "

Mr. *Jarman,* in discussing the period from which a will speaks since the Act of 1 Vict., Ch. 26, enacted in 1837, says, on star page 302, of Vol. 1: "It is clear that if a testator, under the old law, gave an estate or a sum of money to his son John, the gift took effect in favor of his son of that name (if any) at the date of the will, *and of him only.*" The language of that Act was: "Every will shall be construed, with

reference to the real estate and personal estate comprised in it to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." *Mr. Jarman* then adds: "It will be observed that this enactment relates to the *subject-matter* of the disposition, and does not in any manner interfere with the construction in regard to the *objects* of gift, as to whom, therefore, the doctrines previously recognized, respecting the period at which the will speaks, or at which the *objects* are to be ascertained, remain in full force," and on the same page, speaking of a will made or republished since 1837, and containing a gift to the wife of a person other than the testator, says: "On the principle just stated the individual standing in the conjugal relation at the date of the will would take, exclusively of any other person who might happen to answer the description at the death of the testator, * * * The intent is that she who *was* the wife of the person named at the time of making the will should have it, and the person is clearly the description." In support of the construction of the Act of 1837 which he lays down he refers to *Bullock* v. *Bennett*, 7 De Gex, McNaghten and Gordan, 283, in which LORD JUSTICE TURNER, considering that Act, said: "I understand this to mean not with reference to the *objects* of the testator's bounty, who are to take the real and personal estate, but with reference to the real and personal estate which is to be taken by those objects. Had it been intended otherwise, the words 'with reference to the real and personal estate,' would hardly, if at all, have required to be inserted."

Sec. 329 of Art. 93 of Code of 1904, provides that "every last will and testament executed in due form of law after June 1st, 1850, shall pass all the real estate which the testator had at the time of his death." That section was taken from our Act of 1849, Ch. 229, the first section of which is transcribed in full by JUDGE LEGRAND in his opinion in *Magruder & Tuck* v. *Carroll*, 4 Md. 346, and which will be seen to be an exact copy of the Stat. of 1st Vic., Ch. 26, sec. 24, above mentioned. And in *Rizer* v. *Perry*, 58 Md. 121, JUDGE

ALVEY, in his opinion in the lower Court, published in full, with the opinion of the Court in that case, says: "By that section of the Code, founded upon the Act of 1849, Ch. 229, the will is simply made to speak as of the time of the death of the testator, and in that respect changed the former rule of construction or operation of wills." It is true that JUDGE ALVEY did not here expressly limit the change of construction to the *subject-matter* of disposition, as LORD TURNER did in the case above mentioned, and as *Mr. Jarman* does in the passage cited, but it will be observed that he was dealing only with the *subject* of disposition and not with *object* of the testator's bounty, and the legitimate inference is that in adopting the precise language of this English statute the interpretation given to it by the English Courts entered into our Act of 1849, and is its present proper interpretation in the absence of some judicial utterance to the contrary by our own Courts, of which we have no knowledge or intimation.

There are numerous English cases supporting the rule above laid down by *Mr. Jarman.* Among these the following may be especially mentioned: "A bequest by a husband to his 'beloved wife,' not mentioning her by name, applies exclusively to the individual who answers this description at the date of the will, and is not to be extended to an after-taken wife." *Niblock* v. *Garrett,* 1 R. & Myl. 629.

Where there was a gift of an annuity to the wife of testator's nephew, he being then married, the gift was held not to extend to the widow of the nephew who was his second wife. *Boreham* v. *Begnall,* 8 Hare, 131; and this case was followed by SIR GEORGE JESSEL in *Firth* v. *Fielden,* 22 W. R. 622.

So where an appointment was made, under a power in a deed of settlement, to the wife of the donee, LORD LINDLEY said: "Does that extend to any wife that the donee might have, or is it confined to the one he then had? I think by wife is meant his then wife;" and LORD LOPES said: "Sir Henry was then married, and in my judgment the wife contem-

plated and intended was the existing wife, and none other."
*In re Hancock,* 2 Ch.·Div. 184.

. In *Radford* v. *Willis,* 7 Ch. App. 7, it was held by LORD
JAMES that a gift to an unmarried woman for life with re-
mainder in fee to her husband, gives an indefeasibly vested
fee in remainder to her first husband.

*In re Laffan* v. *Downes,* 1 Irish Rep. 469 (1897), it was
held that the fact that the gift to the wife of A. is connected
with a gift to his children which is so expressed as to include
his children by any wife, is not enough to show that a future
wife was intended to be benefited. The doctrine of these
cases is supported by the text of *Theobald* in the sixth edition
of his work on *Wills,* and by the cases there cited, and is af-
firmed in *In re Drew* (1899), 1 Ch. 339, as the *prima facie*
rule, "in the absence of a sufficient context to rebut the pre-
sumption that the gift was confined to the wife living at the
date of the will."

We do not think it necessary to notice the American cases
cited by the appellant in his brief relating to insurance poli-
cies and pauper settlements, though distinctly analogous.
Some analogy may be found in *Estep and Shaw* v. *Mackey,*
52 Md. 592. In that case there was·a devise to H. C. C., an
illegitimate son of the testator alive at the time the will was
made, but who afterwards died, and another illegitimate son
of the testator of the same name being afterwards born claimed
the devise, but the Court held otherwise, saying: "He was not
in being and could not have been intended."

*Mr. Jarman,* on page 303, deduces from general principles
and the authorities cited by him the following propositions:
"First, that a devise or bequest to the wife of A. who has a
wife at the date of the will relates to that person, notwith-
standing any change of circumstances which may render the
description inapplicable at a subsequent period, and by par-
ity of reasoning is under *all* circumstances confined to her;
but that, secondly, if A. have no wife at the date of the will,
the gift embraces the individual sustaining that character at
the death of the testator; and, thirdly, if there be no such per-

son, either at the date of the will or at the death of the testator, it applies to the woman who shall first answer the description of wife at any subsequent period."

These propositions, we think, will be found to embrace fairly and wisely the greater part of all the cases which they are designed to meet, and to enable Courts in applying them to effectuate fairly the intention of testators, always bearing in mind that wherever there is a context which indicates a reasonably clear intention in conflict with any of these propositions, such context must prevail and effect be given to such intention.

One of the strongest cases relied on by the appellees in their brief, *Hitchens* v. *Morrieson*, 40 Ch. Div. 30, is fairly met by *Mr. Jarman's* first proposition above. In that case, Lord Justice Kay held under a residuary bequest of income to the unnamed wife of testator's son, after his decease, and during the life of the wife, that the wife who was such at the date of the will, but was subsequently divorced, could not take the income, though it does not appear in the report of the case that this resulted in creating any intestacy. In so deciding, the Court declined to be bound by the case of *Bullmore* v. *Wynter,* 22 Ch. Div. 619, in which Mr. Justice Fry held the contrary, adopting the rule stated by *Mr. Jarman.* In that case the words of the bequest were: "In trust for any husband with whom she might intermarry, if he should survive her." He was divorced upon his own petition, the wife being the guilty party, and he married again during her life and survived her. The Court said: "It is contended he must survive her as husband—*i. e.,* that he must be her husband at the date of her death in order to take—but I find no such words nor any expression of such intention in the will." The Court adverted to the fact that this wife might also have married a husband from whom she was not divorced, in which case there would be more than one surviving husband, each of whom would satisfy the words of the will, and disposed of that consideration as follows: "But it does not seem to be right to give so much weight to the possibility of such a con-

tingency as to overrule what appears, in my opinion, to be the plain meaning of the will." We prefer to follow in this case *Bullmore* v. *Wynter* rather than *Hitchens* v. *Morrieson,* as more satisfactory in reasoning and as in accord with the apparent weight of authority, and without further considering the cases cited in the able briefs of counsel, we are of opinion that the learned Judge of the Circuit Court erred in rejecting the claim of the wife.

> *Decree reversed, the costs to be paid out of the trust estate both above and below, and cause remanded that a decree may be passed in conformity with this opinion.*