CRAWFORD, Ex'x of the Last Will and Testament
of Francis A. Crawford et al. *v.*
CRAWFORD et al.

[No. 49, September Term, 1972.]

*Decided November 10, 1972.*

*Motion for rehearing filed December 4, 1972; denied December 6, 1972.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*C. Rogers Hall, Jr.,* with whom was *G. Edwin Robertson* on the brief, for appellants.

*Herbert L. Rollins,* with whom were *Rollins, Wenner & Price* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Francis A. Crawford (Francis I) died on 27 April

1922, leaving a will executed three days earlier. Nearly 50 years later, there came a time when the dispositive paragraph of the will came before the Circuit Court for Carroll County for construction. This appeal, brought by Francis I's widow in her individual capacity and as executrix and by his only surviving son, challenges the result reached below.

In March 1971, Jessie Ethel Crawford (Mrs. Crawford), widow of Francis I, in the exercise of what she thought was a right conferred upon her by her husband's will, had conveyed to a trustee title to two farms owned by Francis I at the time of his death and had taken back a reconveyance of the farms for the term of her life, with power to sell, lease or encumber, remainder on her death to her son, Francis Albert Crawford, Jr. (Francis III). Several months later Mrs. Crawford filed a bill in equity seeking a declaration that fee simple title to the farms had been vested in her by her husband's will.

The dispositive provision of the will of Francis I which was of concern to the chancellor and is of concern to us was this:

> "After all my just debts and funeral expenses are paid, I give and bequeath to my dear beloved wife Jessie Ethel Crawford all of my Real and Personal Property, to have and enjoy so long as she shall remain my widow. With the power to divide said Real and Personal Property equally between my two sons Francis J. Crawford and Francis Albert Crawford Jr. said Real Estate to be divided as aforesaid and not sold prior to A D 1935." [1]

The case was heard below on an agreed statement of facts, which may be briefly summarized. Mrs. Crawford married Francis I in 1905. There were two sons: Francis J. Crawford (Francis II), born in 1909, and Francis III (Francis Albert Crawford, Jr.), born in 1914. When

---

1. At oral argument, we were advised by counsel that the scrivener of the will appeared to have been a local justice of the peace.

Francis I died in 1922, he was 59 years of age; Mrs. Crawford was 36; Francis II, 13, and Francis III, seven. The year 1935 was of consequence, because in that year Francis III, the younger son, would attain age 21.

In 1940, Francis II married Hollus Field (Hollus), one of the appellees, and together they moved to one of the farms. They had one son, Francis J. Crawford, III (Francis IV), who is also an appellee. Francis II continued to farm the place which he occupied until his death in 1967, survived by his widow, Hollus, and by Francis IV. Thereafter, Hollus and Francis IV remained on the farm until Mrs. Crawford gave them notice to vacate in 1969. During the interim, Francis II and Hollus had built a barn, a silo and a loafing barn, at least partly at their expense, and had erected or maintained the fencing and gates. Except for one year, however, Mrs. Crawford had paid the taxes.

The chancellor concluded, quite rightly, we think, that by a true and proper construction of the will of Francis I, Mrs. Crawford took an estate *durante viduitate,* an estate during widowhood, which is a life estate subject to a special limitation, *Perin v. Perin,* 139 Md. 281, 293, 115 A. 51 (1921); *Ijams v. Schapiro,* 138 Md. 16, 19, 113 A. 343 (1921); *Maddox v. Yoe,* 121 Md. 288, 291-293, 88 A. 225 (1913); *Hammett v. Hammett,* 43 Md. 307, 309 (1875); *Clark v. Tennison,* 33 Md. 85, 92 (1870); *Gough v. Manning,* 26 Md. 347, 362, 365 (1867); Miller, *Construction of Wills* § 107, at 301 (1927), an estate which would be terminated by the widow's death or remarriage. Despite the inartistic manner in which the will was drafted, this much is palpably clear.

A troublesome aspect of the matter flows from the circumstance that there is no express limitation over in remainder upon termination of the estate during widowhood, and the remainder would pass in intestacy should Mrs. Crawford fail to exercise her power to divide, unless a limitation over can be implied.

In *Clark v. Tennison, supra,* 33 Md. at 92, there was a devise to a widow ". . . so long as she remains my

widow; at her death to be equally divided with my children, and to them and their heirs forever." The testator died in 1854, and on the remarriage of the widow in 1857, the question arose as to the disposition of the estate during the time between the widow's remarriage and her death. The Court noted that the will had been inexpertly drawn and that it was the plain intent of the testator that the widow should have the property no longer than during her widowhood. Under these circumstances, the Court implied a limitation over upon termination of the estate given the wife, whether the termination be by marriage or by death. Similar results were reached under similar facts in *Perin, Ijams* and *Maddox,* all *supra.*

In the instant case, at the time of the death of Francis I, Mrs. Crawford and Francis II and Francis III were the primary objects of the testator's bounty. In *McElroy v. Mercantile-Safe Deposit Co.,* 229 Md. 276, 283-284, 182 A. 2d 775 (1962), we reviewed the well-settled rules of construction, the distillation of which is that the general intent of the testator is in every case the controlling consideration. It certainly could be argued that Francis I intended to vest a remainder in Francis II and Francis III which would come into possession in undivided one-half shares upon the remarriage or the death of Mrs. Crawford. The question is, under what circumstances may a limitation over be implied?

V *American Law of Property* § 23.63, at 644-645 (1952) deals with the situation where A devises a life estate to B and gives B a narrowly restricted power to appoint the remainder among the children of A:

> "The situation last considered includes a typical so-called 'special' power of appointment. The donor of such a special power, having a general intent to benefit the members of the designated class of permissible appointees, may foresee the possibility that the donee will fail to exercise the power. If he does foresee it, the donor likely

will include in the instrument creating the power an express gift in default of appointment and the gift in default likely will be in favor of the class of persons designated as permissible appointees. On the other hand, it may not occur to the donor of such a power that the donee may fail to exercise it. In that event there will be no express gift in default of appointment and, if the donee should die not having exercised the power, the question whether the appointive property passes to the members of the class of permissible appointees or to the donor's heirs or residuary devise[e]s will be raised. That question is considered in this Section.

"As a general proposition, it seems clear that the appointive property should pass, in such a situation, to the designated class of permissible appointees. The donor of the special power of appointment has (1) a general intent to benefit the members of the specified class of permissible appointees and (2) an intent that the apportioning of the appointive property within the class shall be within the discretion of the donee of the power. The fact that the donee has failed to apportion the property within the class should not defeat the donor's intent to benefit the class. Accordingly the appointive property should pass to the class and an equal division of it among the members of the class seems to be the closest approximation to the intent of the donor."

Cited in support of this proposition are *Oglesby v. Springfield Marine Bank,* 385 Ill. 414, 52 N.E.2d 1000 (1944) ; *First-Mechanics Nat'l Bank of Trenton v. First-Mechanics Nat'l Bank of Trenton,* 137 N. J. Eq. 106, 43 A. 2d 674 (1945) ; *Polen v. Baird,* 125 W. Va. 682, 25 S.E.2d 767 (1943) and cases collected in 80 A.L.R. 503 (1932). *See also Massachusetts Institute of Technology v. Loring,* 327 Mass. 553, 99 N.E.2d 854, 856 (1951).

The preferable view would seem to be that the result

will be accomplished by implying a gift over to the permissible appointees in default of the exercise of the power of appointment where there is no specific limitation over in favor of the appointees, *see* Restatement, *Property* § 367, comment b, at 2031 (1940) ; Farwell, *Powers* 466-467 (2d ed. 1893) ; 1 Jarman, *Wills* 549, 551 (6th Am. ed. Bigelow ed. 1893) ; 3 Powell, *Real Property* § 402, at 378.68 (Rohan ed. 1970) ; 1 Scott, *Trusts* §§ 27-27.1, at 229-234 (3d ed. 1967) ; Sugden, *Powers* 591, 594, 595 (8th ed. 1861) ; 3 Tiffany, *The Law of Real Property* § 706, at 75 (3d ed. Jones 1939) ; Rood, *The Disposition to be Made of Property the Subject of a Power if the Power is Not Exercised,* 15 Mich. L. Rev. 386, 396-403 (1917) ; Gray, *Powers in Trust and Gifts Implied in Default of Appointment,* 25 Harv. L. Rev. 1, at 7-9 (1911). Section 367 (2) of the Restatement, *Property,* at 2030, states that before a gift over can be implied the power must be expired. Either the remarriage of Mrs. Crawford or her death would result in expiration of the power. Restatement, *Property, supra,* § 367 comment d, at 2033; *Wilks v. Burns,* 60 Md. 64 (1883) ; 3 Tiffany, *The Law of Real Property, supra,* § 707, at 77.

Alternatively, the proposition may be implemented and the same result reached by treating the special power of appointment as an imperative power which will be executed by the courts in the event of the termination of the prior estate without an exercise of the power by the donee, *see* Restatement, *Property, supra,* § 367, comment c, at 2032; Miller, *supra,* § 256, at 733; Kales, *Estates, Future Interests* § 637, at 730-32 (1920) ; 2 Simes & Smith, *Future Interests* §§ 1032-1033, at 495-506 (2d ed. 1956) ; Moser, *Some Aspects of Powers of Appointment in Maryland,* 12 Md. L. Rev. 13, 20 (1951) ; [2] Simes, *Powers in Trust and the Termination of Powers by the Donee,* 37 Yale L. J. 63 (1927). There is authority

---

2. While the author notes that there are no Maryland cases on this point, an analogy may be found in *Peters v. Van Lear,* 4 Gill 249, 262 (1846) and *Pearce v. Van Lear,* 5 Md. 85, 90 (1853) where a testamentary direction for the manumission of slaves was regarded as conferring an imperative power on executors.

for the proposition that equity will not interpose in favor of a person intended to be benefited by an unexecuted expired power and that where there is no express gift over the reversion goes to the heir or next of kin of the testator; *e.g., Mines v. Gambrill,* 71 Md. 30, 34-35, 18 A. 43 (1889); *Foos v. Scarf,* 55 Md. 301, 310, (1880); *Benesch v. Clark,* 49 Md. 497, 504 (1878); *Howard v. Carpenter,* 11 Md. 259, 282 (1857). However, these cases dealt with general powers and are therefore to be distinguished from the limited power involved in the instant case. *See* Moser, *Some Aspects of Powers of Appointment in Maryland, supra,* n. 30, at 21.

We now turn to the meaning of the phrase ". . . said Real Estate to be divided as aforesaid and not sold prior to A D 1935." The chancellor concluded that this was a special power of appointment vested in Mrs. Crawford in the exercise of which she could divide the farms between Francis II and Francis III. Hollus and Francis IV argue that this was not a power of appointment at all but a purely ministerial right analogizing it to a power to partition, which conferred upon Mrs. Crawford no power of sale, citing *Stein v. Stein,* 79 Md. 464, 29 A. 691 (1894), as authority for the proposition that a power to divide does not imply a power to sell.

We are inclined to accept and expand the conclusion reached below. What we think Francis I intended was that Mrs. Crawford should have only the narrowly restricted power to divide the farms between Francis II and Francis III either by deed of appointment or by the terms of her own will. Thus, whether we regard the power as technically one of division between or appointment to named beneficiaries is not a critical issue in this case. Nor will the result differ if we conclude on the one hand that a limitation over in remainder will be implied in the sons in whose favor a special power of appointment could have been exercised, should Mrs. Crawford die or remarry without exercising the power, or if we conclude on the other that in the event of her death or remarriage, the power will be executed by a court, if not exercised by her.

We hold that by a true and proper construction of the will, Francis II and Francis III each either took by implication a vested remainder in an undivided one-half interest in the two farms or will take an undivided one-half interest in the two farms in the event that the power is judicially executed on the death or remarriage of their mother. Should Mrs. Crawford by deed of conveyance during her lifetime or by the terms of her will purport to exercise her power to divide the farms, a partition may result.

To hold otherwise would result in an intestacy, which should be avoided if sound reason permits, *McElroy v. Mercantile-Safe Deposit Co., supra,* 229 Md. at 283; *Ball v. Townsend,* 145 Md. 589, 600, 125 A. 758 (1924); *Lavender v. Rosenheim,* 110 Md. 150, 153-154, 72 A. 669 (1909).

We can only conclude that the reference to the year 1935, while admittedly obscure, was intended to prevent a partition and consequent sale prior to that year, a question made moot by the passage of time. Whether a division made subsequent to 1935 would accelerate the succeeding interests is not before us. *See* Miller, *supra* § 221, at 608 and *In Re Rogers Trust Estate,* 97 Md. 674, 677-678, 55 A. 679 (1903).

The cases on which Mrs. Crawford places her principal reliance in support of her contention that she took a fee simple estate are readily distinguishable. Francis I clearly intended to create a terminable interest. He did not devise an estate generally or indefinitely, with power to dispose, as was the case in *Welsh v. Gist,* 101 Md. 606, 61 A. 665 (1905). Mrs. Crawford's interest lasted only until death or remarriage, with a power to divide between named remaindermen, who would otherwise take undivided interests in the whole.

Mrs. Crawford was not given alternately power to sell and apply the proceeds to her own use or dispose of the property by will, as was true in *Madler v. Gunther,* 155 Md. 43, 141 A. 422 (1928). Nor was Mrs. Crawford given a power "to sell or hold as may be necessary for

her comfort and support" with remainder on her death to children, which was the form of the devise in *Cadle v. Cadle,* 152 Md. 459, 136 A. 895 (1927) and substantially the form of the devise in *Swope v. Swope,* 5 Gill 225 (1847).

Mrs. Crawford would have us view the remainder over to the two sons as a gift to a class, *i.e.,* to those surviving when the prior estate terminated. The simple answer is that the sons were identified by name, and a class gift ordinarily cannot be created by a gift over to named beneficiaries, *Lumpkin v. Lumpkin,* 108 Md. 470, 497, 70 A. 238 (1908); Miller, *supra* § 68, at 188.

The result which we reach obviates the need for a consideration at this time of Mrs. Crawford's contention that no trust was created by the will. In sum, we adopt the chancellor's declaration that the will vested or will vest on Mrs. Crawford's death or remarriage an undivided one-half share of the remainder interest in the farms in Francis III, on the one hand, and in Hollus and Francis IV, the heirs of Francis II, on the other,[3] subject to the exercise of Mrs. Crawford's power to divide. Therefore, the deeds by which Mrs. Crawford sought to vest fee simple title in herself without the joinder of the remaindermen were null and void.

> *Decree affirmed, costs to be*
> *paid by appellants.*

---

3. At argument, we were told that Francis II had died intestate.