SCOTT *v.* SHUFFLER

[No. 319, September Term, 1972.]

*Decided July 6, 1973.*

The cause was submitted on briefs to MURPHY, C. J., and McWILLIAMS, SINGLEY, SMITH and LEVINE, JJ.

Submitted by *William B. Yates, II*, for appellant.

Submitted by *E. Thomas Merryweather, Calvin Harrington, Jr.*, and *Harrington & Merryweather* for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here affirm the construction placed upon a will by a circuit judge (Mace, J.). Appellant, Rachel Moore Scott, is a daughter of Sarah F. Bell, the testatrix. Helen M. Shuffler, the appellee, is a granddaughter, the only child of a deceased daughter of Mrs. Bell.

John Randolph Moore acquired 68.265 acres of land in the Castle Haven area of the Eighth or Neck Election District of Dorchester County in 1902. He died testate in 1909 leaving his entire estate to his wife, Sarah F. Moore (who later married Bell), for life and upon her death to his children living at the time of his death. There were four children, the appellant, the mother of the appellee, a son, and a daughter, Virginia, who died intestate, unmarried, and without issue in 1932. Accordingly, her undivided one-fourth interest in the remainder passed to her mother. The son died subsequent to his mother and his interest is now vested in appellant. Appellee owns the interest of her mother. The will of Mr. Moore requires no construction, but it is noted that it was prepared by an experienced Dorchester County attorney.

The home on the Moore farm was destroyed by fire several years prior to the death of Mrs. Bell and replaced with a trailer or mobile home. The will of Mrs. Bell appears on the stationery of an experienced member of the Dorchester County bar, now deceased. It is witnessed by that attorney and his secretary, from which the conclusion is drawn that it was prepared by him. Using the words "give and bequeath," the first and second items of the will disposed of personal

property. Under item first the son received a "Pearl Handle Writing Pen," said to have been given his mother by his father. In item second Mrs. Bell bequeathed to her daughter all of the mother's "personal belongings, table linens, bed linens, clothes and jewelry." Mrs. Scott is the beneficiary under item fourth, a residuary clause. The matter in controversy is item third which reads as follows:

"THIRD: I give, devise and bequeath my Trailer Home, together with the furniture, fixtures and furnishings therein, which came with and are used as a part of the trailer, all of which I consider to be a part of the real estate where the same is located, unto the said Rachel Moore Scott, Arthur R. Moore, and my granddaughter, Helen Margaret Shuffler, of Dorchester County, State of Maryland, as tenants in common, equally, share and share alike, their heirs and assigns, in fee simple."

Appellant contends the interest of her mother in the farm passed under the residuary clause, while appellee says it passed under item third. The trailer together with the furniture, fixtures, and furnishings referred to in item third have been sold and the proceeds divided equally among the three heirs. The farm was sold by agreement and the proceeds are being held in escrow pending the outcome of this litigation.

The chancellor in his opinion said:

"Concededly, there is an ambiguity in the Will of Mrs. Bell, but there is nothing in the record before this Court that would provide a reason why Mrs. Bell would intend to disinherit any of her three heirs or to favor one above another. The wording of Item Third would certainly indicate a desire that her three heirs share equally. Item Fourth would appear to be merely a catchall clause. Certainly, the just, natural and reasonable manner of disposing of her property would be such as her heirs would share equally, and there is nothing before this Court to indicate a contrary intention.

"The Court is, therefore, of the opinion that the twenty-five percent fee simple absolute interest acquired by Mrs. Bell from Virginia Moore should be distributed equally, one-third to Rachel Scott, one-third to Arthur Moore and one-third to Helen Margaret Shuffler."

The guidelines for construing a will were succinctly expressed for the Court by Judge Hammond in *Marty v. First Nat'l Bk. of Balto.*, 209 Md. 210, 120 A. 2d 841 (1956):

"In seeking to find what the testator meant, we adhere to the rules and guides which the cases have established. Intention is primary and paramount. This is not the presumed but the expressed intention of the testator. What must be sought is not what the testator meant as distinguished from what his words express, but '* * * simply what is the true meaning of his words; not merely what *he* meant, but what *his words* mean.' *Miller, Construction of Wills*, Sec. 10. *Schapiro v. Howard*, 113 Md. 360. What the words express is to be interpreted according to their plain meaning and import. *Stein v. Safe Deposit & Trust Co.*, 127 Md. 206. This expressed intention of a testator must be gathered from the language of the entire will, particularly from the clause in dispute, read in the light of the surrounding circumstances at the time the will was made. *Chism v. Reese,* 190 Md. 311; *West v. Sellmayer,* 150 Md. 478; *Jones v. Holloway,* 183 Md. 40; *Robinson v. Mercantile Trust Co.,* 180 Md. 336; *Hutton v. Safe Deposit & Trust Co.,* 150 Md. 539, 554." *Id.* at 216-17.

In *Crawford v. Crawford,* 266 Md. 711, 715, 296 A. 2d 388 (1972), Judge Singley for the Court referred to "the well-settled rules of construction" reviewed extensively by Judge Niles in *McElroy v. Mercantile-Safe Deposit and Trust Co.,* 229 Md. 276, 283-84, 182 A. 2d 775 (1962), and said that "the distillation of [them] is that the general intent of the testator is in every case the controlling consideration."

*See also Leroy v. Kirk,* 262 Md. 276, 279-80, 277 A. 2d 611 (1971).

In construing a will, it must be remembered, as Judge Melvin put it for the Court in *Judik v. Travers,* 184 Md. 215, 40 A. 2d 306 (1944) (quoted verbatim in *Veditz v. Athey,* 239 Md. 435, 212 A. 2d 115 (1965)):

> "Where a will is drawn by one learned in the law and skilled in the use of its terminology, the words employed will be considered as having been deliberately chosen to express the testator's intention and will ordinarily be given their accustomed technical meaning. *Buchwald v. Buchwald,* 175 Md. 103, 111, 199 A. 795; *Wiesenfeld v. Rosenfeld,* 170 Md. 63, 183 A. 250." *Id.* at 225.

Moreover, the testator is presumed to have known the amount and character of his property, and to have willed it accordingly. *Bristol v. Stump,* 136 Md. 236, 243, 110 A. 470 (1920); *England v. Prince George's Parish,* 53 Md. 466, 469 (1880); and E. Miller, *The Construction of Wills in Maryland* § 19 at 76 (1927), thus disposing of any thought that Mrs. Bell was unaware of the fact that she owned a one-fourth interest in the farm outright. *In re Clarke's Will,* 198 Md. 266, 81 A. 2d 640 (1951), contains yet another point to be borne in mind, it there being said for the Court by Judge Henderson:

> "In the absence of any evidence of an intention to prefer some of the natural objects of the testator's bounty over others, there is a recognized presumption against such a result. *Fairfax v. Brown,* 60 Md. 50, 60. Cf. *Reed v. McIlvain,* 113 Md. 140, 148, 77 A. 329." *Id.* at 272.

*See also McCurdy v. Safe Deposit & Trust Co.,* 190 Md. 67, 69, 57 A. 2d 302 (1948), and the footnote appearing in *Miller, op cit.,* § 67 where it is said:

> "In most of the American cases, also, the testator is presumed, in providing by will for his children and

descendants, to have a normal parental affection and also a normal sense of parental duty, the leading idea being equality between his living children and the descendants of his deceased children; and the construction of his will is influenced by this presumption." *Id.* at 186.

Bearing these principles in mind, we turn to the case at hand. In the first and second items of the will dealing with items of personal property, the words "give and bequeath" appear, proper terminology for items of personal property, while in item third the word "devise" is used, a term characterized in *Black's Law Dictionary* 539 (4th ed. 1951) as "[a] testamentary disposition of land or realty; a gift of real property by the last will and testament of the donor." This is followed by a reference to real estate and the statement that the parties are to hold "as tenants in common ... in fee simple." It is elementary that real estate must have been intended by that language since an item of personal property could not be held in fee simple.

Mrs. Shuffler is the only child of her mother. Therefore, she, her aunt, and uncle were the natural objects of Mrs. Bell's bounty and affection. There was no indication in the rather brief testimony of any reason that Mrs. Bell would choose her daughter over her son and granddaughter. She was presumed to have known that she owned a one-fourth interest in the farm. The will was prepared by an experienced Cambridge lawyer of many years' standing. Judge Mace correctly labeled the residuary clause as "merely a catchall clause."

Accordingly, when the known facts are considered with the principles applicable in such cases previously stated by this Court, there is but one conclusion that can be drawn, and that is that when the testatrix coupled the words "devise" and "fee simple" with the term "Trailer Home," inelegant or imprecise as that term may be, she intended to use the terminology common to people residing in rural areas and thus referred to the "home place" or "home farm" where she had resided since the early days of the century

438

and in which she owned a one-fourth interest outright in addition to her life estate in the remaining three-fourths. Thus, the interest of the testatrix in the farm passed under item third.

> *Decree affirmed; appellant to pay two-thirds of the costs and the appellee to pay one-third of the costs.*

MARYLAND WINE & LIQUOR, INC. *v.* BOARD OF LICENSE COMMISSIONERS OF PRINCE GEORGE'S COUNTY

[No. 323, September Term, 1972.]

*Decided July 6, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*William E. Brooke* for appellant.

*John M. McLoughlin* for appellee.

McWilliams, J., delivered the opinion of the Court.

A difference of opinion, born of competition in the sale of spirits, requires us to consider the effect of Chapter 720 of the Laws of Maryland of 1970. The trial judge, Loveless, J., upheld the view of the Board of License Commissioners of Prince George's County (Board). The appellant, claiming to have been roundly put upon, has appealed. It is best that we begin by setting forth the relevant part of the Legislature's enactment:

"Section 1. *Be it enacted by the General Assembly of Maryland,* That Sections . . . 103 (a), 103 (d) and 103 (e) of Article 2B of the Annotated Code of Maryland (1968 Replacement Volume and 1969 Supplement), title 'Alcoholic Beverages,' subtitle 'Hours and Days of Sale,' be and the same are hereby repealed and reenacted, with amendments, and that Section 103 (b) be and it is hereby repealed, and all to read as follows:

"In Prince George's County, (a) no holder of any retail alcoholic beverage license or any agent, servant or employee of a holder of any alcoholic beverage license shall sell or serve any alcoholic beverages or permit any alcoholic beverages to be consumed on the licensed premises between the hours of 2:00 A.M. and 6:00 A.M. [and no] *No* holder of any retail alcoholic beverage license or any agent, servant or employee of a holder of any alcoholic beverages license shall be permitted to sell any alcoholic beverage *or* permit any alcoholic beverage to be consumed on the licensed premises between the hours of [12:00 midnight on Saturday] *2:00 A.M.* and 6:00 A.M. [the following Monday, except that holders] Holders of any 'on-sale' retail alcoholic beverage license, their agents, servants, or employees may sell beer and light wine on Sunday, *except* between the hours of *2:00 A.M. and* 8:00

A.M. [and 12:00 midnight and no] *No* holder of a Class A, beer, wine and liquor license shall be permitted to make any sale between the hours of [midnight] *2:00 A.M.* and 6:00 A.M. or on Sunday *after 2:00 A.M.*

"(d) In Prince George's County the holder of a Class A (off-sale) license who offers for sale in his licensed premises commodities other than alcoholic beverages and is open on Sundays for the sale of such commodities shall keep all alcoholic beverages upon the premises in a separate beverage department securely closed and locked in a compartment, compartments or enclosure between the hours of [12:00 o'clock midnight on Saturday] *2:00 o'clock A.M. on Sunday* and 6:00 A.M. the following Monday, subject to rules and regulations of the board of license commissioners not inconsistent with the provisions hereof. The provisions of this subsection shall not apply to alcoholic beverages in storage areas which are not open to the public.

"(e) In Prince George's County notwithstanding any other provisions of this article, but in addition thereto the holder of a beer, wine and liquor license, Class B, his agents, servants or employees shall not sell any alcoholic beverages for consumption off the licensed premises between the hours of [12:00 midnight and] 2:00 A.M. *and 6:00 A.M. or on Sunday after 2:00 A.M.* from any separate store established on the licensed premises as an 'off-sale store' or to keep said 'off-sale store' open for business during said hour and for the purpose of this provision, the board of license commissioners of Prince George's County shall determine by reasonable standards what shall constitute an 'off-sale store.' Nothing herein contained shall prohibit the sale of alcoholic beverages for consumption off the licensed premises between 12:00 midnight and 2:00 A.M. of any day [except

Sunday] provided said sale is made from the bar or restaurant facilities of said licensed premises. *Nothing further herein shall be construed to permit sales at anytime between 2 o'clock A.M. and 6 o'clock A.M. of any day or after 2 o'clock A.M. on Sunday.*"