In the Matter of the ESTATE of L. J. SPENCER, Deceased.

In the Matter of the ESTATE of Fern E. SPENCER, Deceased.

Appeal of Harold SPENCER, Executor of the Estate of L. J. Spencer, Deceased, and Eugene R. Melson, guardian ad litem for the minor grandchildren of L. J. Spencer and Fern E. Spencer.

No. 2–57068.

Supreme Court of Iowa.

Aug. 29, 1975.

Cudahy, Wilcox, Handley & Magee, Jefferson, and Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellant, Harold Spencer, Executor of the Estate of L. J. Spencer, deceased.

E. R. Melson, Jefferson, guardian ad litem for minor grandchildren of L. J. Spencer and Fern E. Spencer.

William C. Ostlund, Jefferson, guardian ad litem for great grandchildren of L. J. Spencer and Fern E. Spencer.

Kurth & Bunger, Carroll, for appellee Lyle Spencer, Trustee of the trust established under the will of Fern E. Spencer.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and McCORMICK, JJ.

LeGRAND, Justice.

This appeal involves the construction of trust provisions established under the will of Fern E. Spencer, deceased, and the related exercise of a power of appointment which she granted to her husband, L. J. Spencer. The trial court found the purported exercise of the power of appointment by L. J. Spencer in his last will and testament was invalid. In the absence of either a gift over or a residuary clause in Fern E. Spencer's will, the trial court decreed the trust property reverted to her estate to be disposed of as intestate property. The executor of the L. J. Spencer estate and the guardian ad litem for the minor grandchildren of L. J. Spencer and Fern E. Spencer appeal. The guardian ad litem for the grandchildren did not file timely notice of appeal, and this proceeding must be dismissed as to him.

No oral evidence was offered. The case was submitted below, and is determinable here, on the wills of Fern E. Spencer and L. J. Spencer, together with the files in both

estates, which were introduced into evidence by agreement.

The factual background of this family dispute is as follows: L. J. Spencer (hereafter referred to as L. J.) and Fern E. Spencer (hereafter referred to as Fern), husband and wife, between them owned a section of land in Greene County. L. J. owned 480 acres, and Fern owned the remaining 160-acre quarter-section.

Fern died in 1944. By her will she left her real estate (the Northeast Quarter of Section 4, Township 85 North, Range 31 West of the 5th P.M., Greene County) in trust for the benefit of her four children—Donna Ilene Spencer, Lyle Darwin Spencer, Dale Eldon Spencer and Harold L. Spencer. She designated L. J. as trustee with power to dispose of the real estate by will or deed by granting a life estate to the four children heretofore named, the remainder to go to their children (her grandchildren). This power was to be exercised when L. J. made an "equitable" distribution of his own 480 acres in the same manner as provided for Fern's land. If any child of L. J. and Fern died without children, the share of such child went to his or her surviving brothers and sister.

The pertinent provisions in the Fern Spencer will, paragraphs three and four, are here set out:

"Three. I hereby nominate and constitute my beloved husband L. J. Spencer, as Trustee, without bond, of the following described real estate owned by me, to-wit:

The Northeast Quarter (NE ¼) of section Four (4) in Township Eighty-Five (85) North, Range Thirty-One (31) West 5th P.M., Iowa.

and authorize and direct my said Trustee to take charge of said real estate on March 1, 1945, and to rent and manage the same during his lifetime or until such time as he makes distribution of his individual property, among his children, as hereinafter provided, such rents * * * to be paid to my said children, Harold Lee Spencer, Donna Ilene Spencer, Lyle Darwin Spencer and Dale Eldon Spencer, in equal shares, at such time and under such conditions as said Trustee deems proper. Each of said four children to share equally in the income thereof. * * *

"Four. My said husband, L. J. Spencer, being the owner of all of said Section Four (4) Township Eighty-five (85) North, Range Thirty-one (31) West 5th P.M., Iowa, except the Northeast Quarter (NE ¼) thereof, which is owned by me, and it being the intention of both myself and my husband, that the entire of said Section Four remain in the family for the benefit of our said children; and therefore, pursuant to the purpose of both myself and my said husband, it is my will and I hereby direct that my said husband L. J. Spencer be and he is hereby, authorized and directed, either by his last will and testament or by deeds executed by him prior to his death, to dispose of [my real estate] * * * to my said children hereinbefore named, if living, and to the survivors of any of my said children if deceased, leaving no child or children of his or her own body, in connection with the disposal of the balance of the lands in said Section Four (4) Township Eighty-five (85) North, Range Thirty-one (31), all of which shall be disposed of by him as a general disposition among said children, it being understood hereby that the said L. J. Spencer shall only dispose of said [real estate] * * * along with his land above referred to, and constituting the entire of said Section Four (4) in the equitable disposition of the entire of said Section Four (4) among said children, as he, in his judgment, finds best, and it being understood hereby that the said L. J. Spencer, in making disposition of said property among said children, shall dispose of the same to said children, granting of a life estate to such children with the remainder going to the survivors of such child or children of his or her own body. And further providing that in the event of the decease of any of said chil-

dren prior to the division thereof, without leaving any issue by his or her own body then and in that event the life estate in said Northeast Quarter of Section Four and the life estate in the entire of said Section Four shall be granted to the survivors of said children, with the remainder in the children of said survivors respectively, it being the intention hereby that no power is granted to the said L. J. Spencer to dispose of said Northeast Quarter of said Section Four, except in the manner herein provided for in the equitable distribution of the entire of said Section Four among my children as hereinbefore specified."

L. J. survived his wife by twenty-eight years. He died in 1972 without having exercised by deed the power of appointment Fern had conferred upon him. He was survived by all four of the children heretofore named, by thirteen grandchildren, and by one great grandchild.

L. J.'s will, a long and minutely detailed instrument, included the following provisions:

"ITEM IV. I hereby give, devise and bequeath unto the Trustee, hereinafter named, all of my real estate of every kind, nature and description, including land owned by me in Humboldt County and Greene County, Iowa, or wherever situated and in particular in this connection, I direct that the trust shall include the 160 acres of land * * * which was property owned by my wife, Fern Spencer, and as to which real estate I have under her Will, a power of appointment to dispose of either by Deed or Will.
" * * *

"(b) The trust herein created is equally for the benefit of my four children, * * and their legal heirs in the event of their death, and in the event that any of my children should die, leaving children, then and in that event, said children shall take the share which would ordinarily have gone to their parents. If any child of mine dies without leaving a child of their own, the share shall be divided between my other living children.
" * * *
" * * *

"(e) Any sums remaining on hand after the establishment of the working balance, as hereinbefore provided, * * * shall be divided by the trustee into four equal shares to be held by the trustee for the use and benefit of each of my children during their lifetime.
" * * *

"(h) The trust shall continue for the longest period permitted by law, which I understand to be that the trust can continue until the death of the last of the persons in being at the time of my death, who will take under this Will, plus 21 years. I would think, therefore, that this trust could and will continue to be in full force and effect, for as long as any of my children or great grandchildren or any of their descendants who are alive at the time of my death, plus 21 years. The trustee shall continue to make payments to the persons entitled thereto, upon the same basis as to my children during their lifetime. In the event that the law should be changed in any way extending the time that a trust might legally be in force, I hereby establish said trust for such longer period that the law permits. The trust contemplated hereunder is to be a legal trust complying fully with the laws of the State of Iowa, and the Court shall construe this Will to be a trust for as long a period as is legally possible, at the time that the trust would normally terminate, it is my wish that the persons benefiting under the trust, shall voluntarily extend the trust for a longer period."

The trial court found the purported exercise of the power of appointment by use of a trust, instead of an outright life estate, violated the terms of the power and was therefore invalid. In its decree the trial court said:

"The intent of Fern Spencer in granting the power to dispose of her real estate to

L. J. Spencer was that he would make an equitable distribution of all of Section 4 by the granting of a life estate to her children with the remainder to their children. Fern specifically stated that it was her intention that no power was granted to dispose of her real estate except in the manner for which she provided.

" * * *

"The attempted exercise of the power by L. J. Spencer was void for exceeding the authority granted by Fern Spencer for not following the requirements set forth in the granting instrument, and for violation of the rule against perpetuities. No part of the attempted exercise of the power was valid."

The trial court concluded Fern's quarter-section must pass as intestate property since her will contained neither a gift over in default of the exercise of the power nor a residuary clause. Under this ruling, the property would go to Fern's four children, all of whom still survive, as tenants in common.

The real disputants here are Harold Spencer as executor of L. J.'s estate and Lyle, successor trustee under Fern's will. They seek to determine which of them shall have the power of management and control of the trust property. Involved also, of course, is the ultimate question as to whose will—L. J.'s or Fern's—shall govern disposition of this land.

The executor states the issues presented by this appeal are as follows:

(1) Was L. J. Spencer's exercise of the power of appointment in conformance with Fern's direction or did it exceed the authority there granted by placing the property in trust rather than granting it outright to the objects of the appointment?

(2) Does the exercise of the power of appointment violate the rule against perpetuities?

(3) Assuming the appointment to be invalid, was the trust established by the will of Fern E. Spencer one which the court will nevertheless enforce by carrying out the intended gift to the persons designated in her will?

The parties agree Fern's intent when she executed her will in 1944 is controlling. However, they analyze that instrument differently, and each, not surprisingly, extracts from her language a reasonable and plausible version favorable to himself and those he represents.

The rule upon which our decision depends is stated this way in *Houts v. Jameson*, 201 N.W.2d 466, 468 (Iowa 1972):

"The basic rules governing our consideration of this will are: (1) the testator's intent is the polestar and must prevail; (2) the intent must be gathered from a consideration of all the language of the will, the scheme of distribution, and the facts and circumstances surrounding the making of the will; and (3) technical rules of construction should be resorted to only if the language of the will is clearly ambiguous or conflicting or testator's intent is for any reason uncertain. *Hollenbeck v. Gray*, 185 N.W.2d 767 (Iowa 1971)."

See also *In re Estate of Lemke*, 216 N.W.2d 186, 190 (Iowa 1974).

Of course, it is *Fern's* wishes which govern. It is *her* intention which L. J. was obliged to honor in the exercise of his power of appointment. The provisions of L. J.'s will are important only in determining if Fern's testamentary directions were carried out.

I. The question to be decided before any other is the first issue posed by the executor: did L. J. exceed his authority by exercising his power of appointment in establishing a trust instead of making outright provision for the beneficiaries?

In this connection, it is important to decide the nature of the power of appointment—general or special.

According to Restatement of Property, § 320 at 1828 (1940) a power is general if

"(a) being exercisable before the death of the donee, it can be exercised wholly in favor of the donee, or,

"(b) being testamentary, it can be exercised wholly in favor of the estate of the donee."

A power is special if

"(a) it can be exercised only in favor of persons, not including the donee, who constitute a group not unreasonably large, and

"(b) the donor does not manifest an intent to create or reserve the power primarily for the benefit of the donee."

From the above it is apparent the power here under review is special, not general. This distinction is significant in deciding the extent of L. J.'s authority. There is little argument that a general power may be exercised by use of the trust device. 1A Scott, *The Law of Trusts*, § 17.2 (3d Ed.1967). The same author raises considerable doubt, however, concerning the authority to do so when the power is special.

The principle is stated as follows in Restatement (Second) of Trusts, § 17 at 59 (1959):

"A trust may be created by

"(a) * * *

"(b) * * *

"(c) * * *

"(d) an appointment by one person having a power of appointment to another person as trustee for the donee of the power or for a third person;

"(e) * * *."

The Restatement comment to clause (d) above contains this:

"(d) *Power of appointment.* If a person has a power of appointment and makes an appointment to another person as trustee, a trust is created, provided that the power is properly exercised."

Another comment to this section deals more directly with special powers:

"If a person has a special power of appointment, that is a power to appoint among the members of a specified class of persons, he can effectively appoint interests to trustees for the benefit of objects of the power, *unless the donor manifests a contrary intent.* See Restatement of Property, § 358. * * * If, however, the donor of the power manifests an intention that the donee should appoint only by directing the distribution of the property outright to or among the objects of the power, the donee cannot effectively make an appointment to trustees for the objects of the power." (Emphasis added.)

The pertinent portion of § 358, Restatement of Property, referred to above is as follows:

"PERMISSIBLE TYPES OF APPOINTMENTS UNDER A SPECIAL POWER.

"If, but only if, *the donor does not manifest a contrary intent,* the donee of a special power can effectively

"(a) * * *

"(b) * * *

"(c) * * *

"(d) * * *

"(e) appoint interests to trustees for the benefit of objects." (Emphasis added.)

For a selection of decisions holding an appointment in trust to be within the donor's intent under a special power see *In Re Reynal's Will*, 58 Misc.2d 518, 296 N.Y.S.2d 158, 162 (1968) [appointment "in such estates, interests and portions" as directed by donee]; *National State Bank of Newark v. Morrison*, 9 N.J.Super. 552, 75 A.2d 916, 919–920 (1950) [appointment to class "as C may provide by his Last Will"]; *Equitable Trust Company v. Foulke*, 28 Del.Ch. 238, 40 A.2d 713, 716–717 (1945) ["such shares as she by any last will appoint"]; *Phipps v. Palm Beach Trust Co.*, 142 Fla. 782, 196 So. 299, 301 (1940) ["absolute discretion" in donee to direct disposition of trust estate]; *North Adams National Bank v. Commissioner*, 268 Mass. 42, 167 N.E. 294, 295

(1929) ["in such shares, estates and proportions and upon such terms, conditions and limitations" as the donee shall direct.]; *Greenough v. Osgood*, 235 Mass. 235, 126 N.E. 461, 463 (1920) ["for such estates and interests, and in such shares and proportions, and to be vested in * * * in such manner" as the donee shall appoint.]

Contrary holdings may be found in *In Re Morgans Trust*, 203 Misc. 149, 111 N.Y.S.2d 142, 143–145 (1952), aff'd 281 App.Div. 715, 118 N.Y.S.2d 556 (1952) ["said capital sum is to be distributed among her children in such shares as she may by Will * * * direct."]; *Union and New Haven Trust Company v. Taylor*, 133 Conn. 221, 50 A.2d 168, 169–172 (1946) ["the principal * * * shall be paid over * * * in such amounts and in such manner" as the donee shall direct.]; *In Re Kennedy's Will*, 279 N.Y. 255, 18 N.E.2d 146, 150 (1938) ["to pay and divide the principal * * * children" as the donee should appoint by her last will.]; *In Re Johnson's Estate*, 276 Pa. 291, 120 A. 128, 129 (1923) [to brother for life, remainder in trust for brother's children "for such estate * * * as he may by last will appoint.']; *Hooper v. Hooper*, 203 Mass. 50, 89 N.E. 161, 163 (1909); and *Myers v. Safe-Deposit and Trust Company*, 73 Md. 413, 21 A. 58, 60 (1891).

None of these cases fits our pattern perfectly. Perhaps the only lesson to be learned from them is that each case must turn on its own peculiar facts. So we come back, rather circuitously, it is true, to the prime question—Fern's intent.

Our task is made more difficult because each of the opposing arguments is plausible, logical, and persuasive. Like the trial court, we are frank to concede the conclusion we reach is by no means the only possible one. As is frequently the case, we must perforce choose between two competing theories, neither of which reflects an entirely satisfactory result.

Our de novo review leads us to agree with the trial court in some, but not all, of its conclusions. We find nothing in Fern's will to "manifest a contrary intent" and we hold L. J.'s exercise of the power of appointment by designating a trustee to carry out Fern's intent was valid. To that extent we disagree with the trial court.

Fern's will discloses two overriding factors in her testamentary plan—that inheritance be limited to her blood line and that the entire section of land (her quarter-section and L. J.'s three-quarters) devolve as a unit.

She was specific in her instructions as to the manner in which this was to be accomplished. We see no escape from her edict that her natural children should have a life estate and her natural grandchildren the remainder. She said L. J. had "no power" to dispose of her real estate "except in the manner herein provided for in the equitable distribution of the entire of said section [of land] among my children as hereinbefore specified."

Although the language used in Fern's will is not entirely free from uncertainty ("as he, in his judgment, finds best" versus "no power to dispose of [the property] except in the manner herein provided"), there can be no doubt about Fern's direction that upon the expiration of the life estates enjoyed by her children, their issue (her natural grandchildren) should have a remainder interest. Despite the gratuitous statement in L. J.'s will that he was fully carrying out Fern's intention, the facts belie that claim. It is clear L. J. did not want the trust to *ever* end. While Fern directed the remainder should vest as her children, one by one, died, L. J.'s will continued the trust for as long as "legally possible" and importuned those who took an interest under his will to voluntarily continue the trust beyond that time.

We are unable to reconcile Fern's command that title vest as above indicated with L. J.'s insistence that it should not. The two wills cannot be squared; and since one must give way to the other, we are bound to carry out Fern's intent.

We hold, therefore, the exercise was partially valid and partially void. For authority holding an attempted exercise of power of appointment may be partly good and partly bad, see *In Re Cary's Will*, 44 Misc.2d 929, 255 N.Y.S.2d 419, 422 (1965) [relying on a statute]; *Busch v. Dozier*, 375 S.W.2d 27, 33 (Mo.1964); *Welch v. Morse*, 323 Mass. 233, 81 N.E.2d 361, 363 (1948); *Parker v. MacBryde*, 4 Cir., 132 F.2d 932, 938, *cert. denied* 318 U.S. 779, 63 S.Ct. 859, 87 L.Ed. 1147 (1943); *Old Colony Trust Company v. Richardson*, 297 Mass. 147, 7 N.E.2d 432, 436–437 (1937). See also Annot., 121 A.L.R. 1226 (1939); Restatement of Property, § 362 (1940); 62 Am.Jur.2d, Powers, §§ 86, 89 (1972); 72 C.J.S. Powers § 46 at 459 (1951). A holding of partial invalidity is generally limited to instances in which the interests of the beneficiaries of the power are severable. Since the life interests of the four children are clearly severable from the remainder interests in their issue, there is no reason we cannot here enforce the part which is valid.

■ We hold L. J.'s exercise of the power of appointment was valid in establishing a trust to carry out the life estate granted to the four children of L. J. and Fern. We hold the appointment invalid in attempting to circumvent the direction that the remainder, after the termination of the life estates, vest as heretofore set out. To that extent the exercise of the power was void.

■ III. We must now decide the consequences of our decision. We do not agree the property should go as intestate property. It is within our power to carry out the manifest intent expressed by Fern (except with respect to keeping the whole section of land as a unit) and we should do so, especially since the law seeks to avoid partial intestacy if possible. *Hollenbeck v. Gray*, 185 N.W.2d 767, 769 (Iowa 1971); *In Re Estate of Lamp*, 172 N.W.2d 254, 259 (Iowa 1969); *In Re Estate of Fairley*, 159 N.W.2d 286, 289 (Iowa 1968). See also *Crawford v. Crawford*, 266 Md. 711, 296 A.2d 388, 393, 394 (1972).

■ An invalid exercise of a power of appointment constitutes default. *Rosenthal v. First National Bank*, 88 Ill.App.2d 82, 232 N.E.2d 265, 270, 275 (1967); *In Re Ball's Trust*, 43 Misc.2d 84, 249 N.Y.S.2d 924, 926 (1964); *Low v. Bankers Trust Company*, 270 N.Y. 143, 148, 200 N.E. 674 (1936). See also 62 Am.Jur.2d, Powers, § 100 at n. 11 (1972).

■ As already shown, we are dealing here with a special power of appointment. When there is a default in the exercise of such a power, equity courts will distribute the corpus in accordance with the intent of the donor of the power. 62 Am.Jur.2d, Powers, § 100 at 199–201 (1972). They do so on one of two theories, either by holding there is an implied gift or an implied trust. The distinction between the two is often blurred and is without great significance in any event. See *Crawford v. Crawford*, 266 Md. 711, 296 A.2d 388, 391–392 (1972); *First Portland National Bank v. Rodrigue*, 157 Me. 277, 172 A.2d 107, 121–122 (1961); *Hedges v. Russell*, 1 N.J.Super. 434, 61 A.2d 910, 912 (1949); *Old Colony Trust Company v. Richardson*, supra, 297 Mass. at 147, 7 N.E.2d at 432; 1 A. Scott, The Law of Trusts, §§ 27, 27.1 (3d Ed.1967); 5 Page on Wills, § 45.23, pages 566–567 (Bowe-Parker Ed.1960); 1 G. Bogert, The Law of Trusts and Trustees, (2d Ed.1960), § 116 at 592; Restatement of Property, § 367 (1940); Restatement (Second) of Trusts, § 27 (1959); 32 Iowa L.Rev. 732 at 733–734 (1947).

We adopt the implied gift theory as the better reasoned and more logical rationale by which to carry out substantially Fern's intent except as to keeping both her land and L. J.'s as a single unit.

■ IV. Some disagreement exists over whether the Spencer grandchildren should take, if they take at all, per stirpes or per capita. We find Fern used "children" and "issue" interchangeably. We believe, and so hold, she manifested a clear intent that the remainder interest in her real estate should vest in the bodily issue of her four children in per stirpes shares, not per capi-

ta. Thus, upon termination of the life estates, title will vest separately in four equal shares, one of which shall go to the surviving natural children of each of the four children of L. J. and Fern. Should any child of L. J. and Fern die not survived by issue of his or her body, the share of such child under Fern's will shall go equally to the surviving brothers and sister of such child.

V. This conclusion makes it unnecessary to consider the last issue—the rule against perpetuities. § 558.68, The Code. Since title will vest at the termination of existing life estates held by Fern's four children, the measuring lives were all in being at the time of Fern's death.

■ VI. One final matter remains. L. J.'s will contained an anti-contest clause penalizing anyone who contested his or Fern's will by eliminating all provisions in favor of that person and substituting therefore a legacy of $1.00. The trial court found, and we agree, that this provision does not operate as a bar against any party to this litigation. See *Geisinger v. Geisinger*, 241 Iowa 283, 295, 41 N.W.2d 86, 93 (1950) and *In Re Cocklin Estate*, 236 Iowa 98, 105, 106, 17 N.W.2d 129, 135 (1945).

VII. In summary we hold as follows:

1. L. J.'s appointment of a trustee to carry out the power granted him by Fern's will is a valid exercise of the power of appointment.

2. L. J. exceeded the authority given him by disregarding Fern's directions that the property vest in designated beneficiaries upon the death of the life tenants and to that extent the exercise of the power of appointment is void.

3. The property in dispute (Fern's quarter-section of land) shall not be considered as intestate property but rather shall devolve by way of implied gift to the persons and in the manner heretofore set out.

Costs shall be assessed against the executor of the estate of L. J. Spencer.

The decree of the trial court is accordingly affirmed in part and reversed in part.

Affirmed in part and reversed in part.